Filed 11/19/14; pub. order 12/12/14 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| J. P., a Minor, etc., et al., | D062912 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. Nos. 37-2010-00060474-CU-PO-NC; |
| CARLSBAD UNIFIED SCHOOL DISTRICT, | 37-2010-00060475-CU-PO-NC) |
| Defendant and Appellant. | |

APPEAL from a judgment and orders of the Superior Court of San Diego County, Timothy M. Casserly, Judge. Affirmed.

Stutz Artiano Shinoff & Holtz, Daniel R. Shinoff and Paul V. Carelli IV for Defendant and Appellant.

Taylor & Ring and David M. Ring; Esner, Change & Boyer and Holly N. Boyer for Plaintiffs and Respondents.

A jury found defendant Carlsbad Unified School District (CUSD) liable for negligently supervising an elementary school teacher, Raymond Firth, who sexually molested plaintiffs J. P. and E. B. (together, the minors). The jury awarded the minors

economic and non-economic damages. After entering judgment on the jury's verdict, the trial court denied CUSD's motions for judgment notwithstanding the verdict and for a new trial. Firth was a defendant in the trial court but is not a party to this appeal.

CUSD contends the court erred in denying its motion for judgment notwithstanding the verdict (and its earlier motion for nonsuit) because (1) the minors did not file a government claim with the CUSD within the required six-month period (Gov. Code, § 911.2) and (2) the evidence did not support the minors' argument that CUSD was equitably estopped from enforcing this limitation. CUSD also contends the court erred by providing incorrect jury instructions, and an insufficient special verdict form, on the issue of equitable estoppel. CUSD further contends the court erred in denying its motion for a new trial because the evidence did not support the jury's award of future economic damages to the minors. We conclude the evidence supported the application of equitable estoppel and the trial court did not otherwise err. We therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2007, J. started third grade in CUSD's Pacific Rim Elementary School (Pacific Rim). Firth was J.'s teacher. During the second week of school, J. stayed late in Firth's classroom to fill out her homework planner. Firth came up behind J. and began to rub her chest and vaginal area with his hands over her clothes. Firth continued to rub, with some force, for a couple minutes. J. knew what Firth was doing was wrong, and she got up and left the classroom.

2

That night, J. told her father, Chad P., what had happened. Chad called J.'s mother, Christina P., and J. told her about the incident as well. Christina tried to call the school that night, but no one was there at the time. Christina also called the police, but she declined to make a report then. J. was already asleep, and Christina did not want to wake her.

Christina, Chad, and J. went to Pacific Rim the next morning and asked to speak with the principal. Christina told the principal, Robert Devich, that Firth had touched J. inappropriately. Devich expressed his concern and explained that J.'s allegation needed to be handled by his supervisor, Torrie Norton, who was CUSD's assistant superintendent for personnel. Devich said he would arrange a meeting with Norton at the CUSD district office later in the day. Devich told Christina not to speak with anyone about the incident.

Devich called Norton and informed her of J.'s allegations. Within an hour, Norton went to Pacific Rim, met with Devich, and determined that Firth would be placed on paid administrative leave pending a CUSD investigation. Devich removed Firth from his classroom and arranged for a substitute teacher.

That afternoon, Christina and J. went to CUSD's offices to meet with Norton. A private attorney for CUSD, Gretchen Shipley, also attended the meeting. After brief introductions, Norton and Shipley met with Christina first and then called J. into the meeting as well. Christina and J. explained what had occurred. At Norton's request, Christina and J. also made written statements, which Norton collected.

Norton told Christina that Firth had been put on paid administrative leave. Norton explained that she would report the incident to child protective services and the police,

3

because CUSD was a mandatory reporter. Norton also explained that CUSD would undertake its own investigation of Firth as well. Norton told Christina to "sit tight, not to talk to anybody and that they would be in touch." Norton attempted to contact the police, but for several days she could not get through to the police detective she had worked with. (He was on vacation.) During this time, Christina checked and found out that a police report had not been filed. She went to a police station with J. and reported the incident herself. After her report, Christina spoke with Kelly Mok, a prosecutor, and several police detectives.

During the ensuing investigation, Norton and Devich repeatedly told Christina and her family not to talk to anyone about J.'s allegations. For example, Devich spoke with Christina by telephone the week after J. reported the incident. He called to discuss a new substitute teacher in Firth's former classroom. Devich also said he had heard from another parent that J. had been discussing the molestation incident. Devich told Christina it was important for J. to stop. Devich said he had been told by CUSD and Kelly Mok, the prosecutor, that any type of rumors about the incident would hurt the chances of a successful prosecution. Devich also pulled J. out of class and spoke to her directly about keeping quiet.

At various times, Christina spoke about the incident to therapists, child protective services, the police, and a forensic interviewer who specialized in child abuse. Christina also wrote down the name and number of a civil lawyer, although there was no evidence she contacted him.

4

After approximately a year, the criminal investigation into Firth stalled. Christina was told that the investigation was ongoing, but it had entered inactive status. Later, for reasons that are not clear from the record, the investigation proceeded and charges were brought against Firth. Christina and J. testified at Firth's preliminary hearing.

E. was a student in Firth's third-grade class the year before J. After Firth's preliminary hearing, E.'s mother, Eliza B., saw an article about the criminal case involving Firth. Eliza asked E. whether Firth had acted inappropriately towards her. After some hesitation, E. disclosed that Firth had molested her as well. E. explained that, during her third-grade year, she sat on Firth's lap and he touched her underneath her underwear. E. later testified that Firth also placed his finger in her vagina. Firth molested E. almost every day during her third grade year.

Eliza went to Pacific Rim the morning after E.'s disclosure to report the abuse. She asked for Devich, but he was at CUSD's district office. Eliza then went to the district office, and E.'s father Chris B. met her there. They met with Norton and told her of E.'s allegations. Norton pulled Devich out of a principals' meeting to speak with Eliza and Chris. He expressed his concern and sympathy for E.

Norton explained that Firth no longer worked for CUSD. Given the criminal charges against Firth, Norton was "very adamant" that Eliza and Chris should not speak with anyone about the incident. Norton did not want them to jeopardize Firth's prosecution. Norton called Mok, the prosecutor who was handing Firth's criminal case. Mok arrived at the district office with a police detective and spoke with Eliza and Chris. Mok repeated Norton's instruction that Eliza and Chris not talk to anyone about the

5

incident. Mok explained that they should not talk to anyone to avoid contaminating the criminal case against Firth. Norton encouraged Eliza and Chris to heed Mok's advice.

Aside from their immediate family, Eliza and Chris spoke only to a counselor about the incident. Chris also made an anonymous comment on an online article about Firth. Chris's comment read approximately as follows: "As parents, we learned of the story from *The Coast News*, and after discussing it with our child, we learned the horrific news that she had been scared to bring [it] up with us for two-plus years."

The criminal case against Firth continued. Eliza testified at a further preliminary hearing. Mok continued to emphasize the importance of not discussing the incident with anyone.

The next year, the district attorney's office entered into a plea bargain with Firth, who agreed to plead guilty. Both families testified at Firth's sentencing hearing. They had not met before then.

Approximately six weeks after the sentencing hearing, J. and E. presented government claims to CUSD. CUSD returned the claims without action because it believed them to be untimely. J. and E. then filed civil complaints against Firth and CUSD, alleging various causes of action arising from their molestation. The two lawsuits were consolidated for all purposes, including trial.

The court held a four-week jury trial in May and June 2012. The minors pursued causes of action for sexual battery (against Firth) and negligent supervision (against CUSD). As relevant to this appeal, Christina, Eliza, and Chris testified regarding their interactions with CUSD administrators and their inability to file a government claim

6

within the required time period. They described the repeated instructions from Devich, Norton, and Mok not to discuss the case with anyone, which they believe they followed. Christina explained that she did not contact any lawyers to discuss filing a civil suit until Firth's guilty plea because CUSD administrators had told her not to talk to anyone. Similarly, Eliza testified that she did not speak to anyone about the possibility of filing a claim until after Firth's guilty plea because she was told not to talk about the case. Chris testified that the first time he talked to anyone about filing a civil lawsuit, or considered that option, was at Firth's sentencing hearing.[1]

The minors also presented testimony from an expert witness, Dr. Clark Clipson. Clipson, a clinical and forensic psychologist, testified regarding the harm caused by Firth's molestation. Clipson testified that both J. and E. suffered from multiple mental conditions. He diagnosed J. with posttraumatic stress disorder, dysthymic disorder, and dependent personality traits. He diagnosed E. with generalized anxiety disorder and dependent personality traits.

Clipson explained that J. and E. will suffer long-term injuries as a result of Firth's molestation. Clipson believed that J. and E. would be at a higher risk for psychological problems in the future. Clipson testified that future symptoms of mental illness could be

---

[1] J. and E. also presented evidence of their molestation and CUSD's failure to adequately supervise Firth. Among other things, J. and E. showed that CUSD did not act on prior complaints against Firth and did not ensure that Firth acted appropriately with his students. Because CUSD does not challenge the jury's verdict on the issue of negligent supervision, we need not discuss the facts surrounding that issue in detail.

triggered by normal events in the minors' lives, including adolescence, dating, and sexual experiences.

Family members testified that J. and E. were psychologically scarred by the molestation. Christina said that J. had high anxiety, that her self esteem was extremely low, and that she picks at parts of her body until they bleed. Eliza said that E. had mood swings, anxiety, fear, headaches, and stomachaches. E. herself testified that she has nightmares and is scared because Firth was recently released from prison.

Given J. and E.'s psychological conditions, Clipson opined, "I feel that both of them need treatment within the next few years specifically for the incidents related to Mr. Firth. And I think they're probably going to need treatment down the road when their symptoms are triggered by other events later in life." Clipson offered specific recommendations as to each minor. As to J., Clipson opined, "I think at this point in her life she needs [psychological] treatment twice a week for about a year." Clipson also opined that J. should have weekly appointments with a psychiatrist to assess the efficacy of medication. The appointments could be reduced to once every two months once her medication was stabilized. Clipson testified that the average rate for a psychologist was $200 per hour and the average rate for a psychiatrist was $250 per hour. Given these rates, Clipson opined that the total cost for J.'s recommended therapy would be $30,000.

8

Clipson testified that he would make similar recommendations, at similar cost, for E.'s treatment.[2]

At the close of the minors' case-in-chief, CUSD moved for nonsuit on the issue of equitable estoppel. CUSD argued that the minors had not presented evidence sufficient to establish estoppel. The trial court denied CUSD's motion. CUSD then presented its case-in-chief. Firth did not appear at trial or present evidence.

During preparation of jury instructions, the minors and CUSD offered competing proposals on the issue of equitable estoppel. CUSD argued that the jury should be instructed with CACI No. 456, modified slightly to account for circumstances of the case (i.e., a government claim).[3] The minors countered that CACI No. 456 improperly narrowed the scope of equitable estoppel, contrary to applicable case law. The minors

---

[2]    During closing arguments, the minors' counsel argued that J. and E.'s future medical costs were "the future therapy figures that Dr. Clipson told you about. What did he say? $20-$30,000 maybe."

[3]    The instruction proposed by CUSD reads as follows: "J. P. and E. B. claim that even if their lawsuit was not filed on time, they may still proceed because CARLSBAD UNIFIED SCHOOL DISTRICT did or said something that caused J. P. and E. B. to delay filing their government claim. In order to establish the right to proceed, J. P. and E. B. must prove all of the following: [¶] 1. That CARLSBAD UNIFIED SCHOOL DISTRICT said or did something that caused J. P. and E. B. to believe that it would not be necessary to file a government claim; [¶] 2. That J. P. and E. B. relied on CARLSBAD UNIFIED SCHOOL DISTRICT's conduct and therefore did not file the lawsuit within the time otherwise required; [¶] 3. That a reasonable person in J. P. and E. B.'s position would have relied on CARLSBAD UNIFIED SCHOOL DISTRICT's conduct; [¶] 4. That after the limitation period had expired, CARLSBAD UNIFIED SCHOOL DISTRICT's representations by words or conduct proved not to be true; and [¶] 5. That J. P. and E. B. proceeded diligently to file a government claim within six months of discovering the actual facts. [¶] It is not necessary that CARLSBAD UNIFIED SCHOOL DISTRICT has acted in bad faith or intended to mislead J. P. and E. [B.]"

9

proposed removing the fourth element from CACI No. 456, which requires the jury to find that a defendant's statements are untrue. The trial court agreed and instructed the jury with a modified version of CACI No. 456 omitting that element.[4] Similarly, the parties disagreed regarding the wording of the special verdict forms. CUSD argued that the verdict forms should recite each element of equitable estoppel as stated in CACI No. 456. The minors disagreed. Following argument, the court decided to use a modified version of the minors' proposed verdict forms, which addressed estoppel in two questions.[5]

The jury found in favor of J. and E., and against Firth and CUSD, on both causes of action. The jury determined that Firth committed sexual battery on J. and E. and that CUSD was negligent in its supervision or retention of Firth. The jury further determined

---

[4]    The instruction given by the court reads as follows: "Each plaintiff claims that even if her government claim was not filed on time, she may still proceed because the school district did or said something that caused plaintiff's parents to delay filing the government claim. In order to establish the right to proceed, each plaintiff must prove all of the following: [¶] 1. That the school district said or did something that caused plaintiff's parents to delay in filing a government claim; [¶] 2. That plaintiff's parents relied on the school district's conduct and therefore did not file the government claim within the time otherwise required; [¶] 3. That a reasonable person in plaintiff's parent's position would have relied on the school district's conduct; and [¶] 4. That plaintiff's parents filed a government claim within six months after the effect of the school district's delay-inducing conduct ended. [¶] It is not necessary that the school district acted in bad faith or intended to mislead plaintiff's parents"

[5]    The verdict forms provided to the jury asked, in relevant part, the following: "3. Should Carlsbad Unified School District be estopped from asserting that [the minor's] parents filed a late government claim on [the minor's] behalf because Carlsbad Unified School District did or said something that caused [the minor's] parents to delay in filing a claim?" and "4. Did [the minor's] parents file a government claim on [the minor's] behalf with Carlsbad Unified School District within six months after the effect of the delay-inducing conduct ended?"

10

that CUSD should be equitably estopped from enforcing the six-month limit against J. and E.'s government claims and that J. and E. had filed their claims within six months after the effect of CUSD's delay-inducing conduct ended.

The jury found the conduct of both Firth and CUSD to be a substantial factor in causing harm to J. and E. The jury assessed 60 percent responsibility for the harm to Firth, and 40 percent to CUSD. The jury awarded J. $200,000 in future economic damages (medical expenses) and $1.6 million in past and future non-economic damages. The jury also awarded E. $200,000 in future economic damages (again, medical expenses) and $2.5 million in past and future non-economic damages. The court entered judgment for J. and E., and against Firth and CUSD, accordingly.

CUSD moved for judgment notwithstanding the verdict, repeating its earlier argument (from its motion for nonsuit) that J. and E. had not presented sufficient evidence to support equitable estoppel. CUSD also moved for a new trial, arguing that the evidence did not support the jury's award of $200,000 in future economic damages to each minor. The court denied both motions. This appeal followed.

DISCUSSION

I

CUSD first contends the trial court erred in denying its motion for judgment notwithstanding the verdict (and its earlier motion for nonsuit) because (1) it is undisputed that the minors did not file their government claims within the six-month

11

period established by Government Code section 911.2[6] and (2) the minors did not present evidence sufficient to satisfy the elements of equitable estoppel. " '[T]he existence of an estoppel is generally a question of fact for the trier of fact, and ordinarily the [fact-finder's] determination is binding on appeal unless the contrary conclusion is the only one to be reasonably drawn from the facts.' " (*Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023, 1043 (*Ortega*).) We review the court's orders denying CUSD's motions for nonsuit and judgment notwithstanding the verdict for substantial evidence. (See *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 845.)

"In reviewing the sufficiency of evidence on appeal, we resolve all conflicts in favor of the prevailing party and we indulge all legitimate and reasonable inferences to uphold the verdict if possible. 'It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' " (*Ortega*, *supra*, 64 Cal.App.4th at p. 1043.) Nonetheless, the evidence must support each

---

6 Effective January 1, 2009, the government claim presentation requirement no longer applies to claims for childhood sexual abuse. (See Gov. Code, § 905, subd. (m); *S.M. v. Los Angeles Unified School Dist.* (2010) 184 Cal.App.4th 712, 721, fn. 6.) Because the abuse here occurred before that date, however, the claim requirement (with its six-month time limitation) governs this case. (See Gov. Code, § 911.2; *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 208-209.)

of the required elements of a claim or defense. " ' "[The evidence] must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case." ' " (*Ibid.*)

"It is well settled that a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act." (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 445 (*John R.*).) "Estoppel as a bar to a public entity's assertion of the defense of noncompliance arises when the plaintiff establishes by a preponderance of the evidence: (1) the public entity was apprised of the facts, (2) it intended its conduct to be acted upon, (3) plaintiff was ignorant of the true state of facts, and (4) relied upon the conduct to his detriment." (*Christopher P. v. Mojave Unified School Dist.* (1993) 19 Cal.App.4th 165, 170 (*Christopher P.*); see *Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305.)

"Estoppel most commonly results from misleading statements about the need for or advisability of a claim. [Citations.] Estoppel may also be invoked where conduct on behalf of the public entity induces a reasonably prudent person to avoid seeking legal advice or commencing litigation." (*Christopher P.*, *supra*, 19 Cal.App.4th at p. 170; see *Fredrichsen v. City of Lakewood* (1971) 6 Cal.3d 353, 357.)

" 'An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. [Citation.] To create an equitable estoppel, "it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from

13

loss." . . . " . . . Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense." ' " (*Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1152-1153 (*Vu*); see *John R.*, *supra*, 48 Cal.3d at p. 445.) "Obviously, if presented with good cause, late [government] claims must be accepted; by informal action the same result follows in an estoppel relationship." (*Bertorelli v. City of Tulare* (1986) 180 Cal.App.3d 432, 442.)

Here, CUSD administrators repeatedly told the minors' parents they should not discuss the molestations with anyone to avoid jeopardizing the criminal investigation and prosecution of Firth. Their instruction was emphasized by the prosecutor, who warned the parents that speaking about the incident could contaminate the criminal case against him. CUSD administrators encouraged the parents to heed the prosecutor's warnings.

CUSD's repeated instructions to stay silent, coupled with the threat that prosecution of their daughters' attacker would be endangered if they did not comply, exerted a powerful influence on the parents' actions. At trial, the parents testified to the intimidating effect of the CUSD's statements. Both J.'s mother (Christina) and E.'s mother (Eliza) said that they did not speak to anyone about the possibility of civil claims against CUSD because they had been told by CUSD administrators not to discuss the molestation with anyone.

CUSD's affirmative statements to the minors' parents, directing them to stay silent to ensure the criminal case against Firth remained viable, caused the minors' parents (and thus J. and E. themselves) to delay seeking legal advice and pursuing their government claims against CUSD. Equitable estoppel therefore applies to prevent CUSD from

14

benefiting from its conduct under the circumstances here. (See *John R.*, *supra*, 48 Cal.3d at p. 445; *Christopher P.*, *supra*, 19 Cal.App.4th at p. 170; see also *Vu*, *supra*, 26 Cal.4th at pp. 1152-1153.) While CUSD administrators may not have intended to prevent J. and E. (or their parents) from filing government claims, such intent is not necessary for estoppel to apply. (See *John R.*, *supra*, 48 Cal.3d at p. 445 ["[A]ctual fraud or intent to mislead is not essential."].)

CUSD argues that equitable estoppel should not apply here because the statements of CUSD administrators did not mislead the parents into delaying filing their government claims. We disagree. Equitable estoppel does not require factually misleading statements in all cases. (See, e.g., *John R.*, *supra*, 48 Cal.3d at p. 445 [estoppel may apply where teacher made "threats to retaliate against [the victim] if the boy reported the incidents of sexual molestation"]; *Ortega*, *supra*, 64 Cal.App.4th at p. 1047 [estoppel may be found where public entity "engaged in some calculated conduct *or* made some representation *or* concealed facts which induced the plaintiff not to file a claim or bring an action within the statutory time"] [emphasis added]; see also *Christopher P.*, *supra*, 19 Cal.App.4th at p. 173 ["A directive by an authority figure to a child not to tell anyone of the molestation is a sufficient inducement of delay to invoke an estoppel."].)

While CUSD's conduct was less egregious than the conduct of the school districts and teachers at issue in *John R.* and *Ortega*, as CUSD points out, these factual distinctions do not support CUSD's position that equitable estoppel is unavailable here. "While a simple directive 'not to tell' is distinguishable from the continuing threats of harm should the child disclose the molest that were alleged in *John R.*, it may

15

nevertheless support an estoppel when assessed in light of the circumstances under which it was uttered." (*Christopher P.*, *supra*, 19 Cal.App.4th at p. 173.)

The instruction not to tell in *Christopher P.* was made by an abuser to his victim, but we believe the circumstances are sufficiently compelling to support an estoppel here as well. CUSD administrators presented themselves as helpful authority figures to obviously traumatized parents. The administrations directed J. and E., and their parents, not to talk to anyone about the molestation incidents and warned that failure to comply would jeopardize the criminal investigation and prosecution of Firth. CUSD's statements were bolstered by the prosecutor handling Firth's criminal case, whose authority the CUSD administrators invoked. To the families, the statements effectively amounted to a threat that Firth would not be convicted if they talked to anyone. Substantial evidence therefore supports the jury's finding that equitable estoppel applies. (See *Christopher P.*, *supra*, 19 Cal.App.4th at p. 173; see also *Ortega*, *supra*, 64 Cal.App.4th at p. 1047.)

CUSD further argues that the evidence does not support a finding that J. and E.'s parents were reasonable in relying on the statements of CUSD administrators not to talk with anyone (including a civil lawyer) about the molestation incidents. (See *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 655.) CUSD points out that its administrators did not specifically discuss government claims, civil lawsuits, or legal assistance with J., E., or the parents. CUSD also references evidence that J. and E.'s parents spoke to certain individuals about the molestation incidents, apparently contrary to the parents' understanding of the CUSD's instruction not to talk to anyone.

16

We disagree that either of these circumstances compels a finding that the parents did not reasonably rely on CUSD's instructions. The statements made to J. and E.'s parents were clear: they were not to talk to anyone, they were to keep the molestation incidents confidential, and any discussion of the incidents could compromise the investigation and prosecution of Firth. Under these circumstances, substantial evidence supports the jury's finding that it was reasonable for J. and E.'s parents to interpret CUSD's statements as prohibiting any discussion of the molestation incident with civil lawyers or others who might have counseled them to file a government claim. Moreover, viewing the evidence in the light most favorable to the minors, and drawing all reasonable inferences in support of the judgment, as we must, we also conclude that the evidence of the parents' discussions with certain individuals also do not preclude a finding of reasonable reliance here. J.'s mother, Christina, believed that the individuals with whom she spoke were connected to the investigation of Firth or therapy for J. (which CUSD endorsed). Christina also obtained the name of a civil lawyer, but there is no evidence she sought that information or that she actually spoke to him. Eliza and Chad, E.'s parents, spoke only to family members and a therapist. Chad also posted a comment on an online article referencing E.'s molestation, but it was anonymous. Under the circumstances, it is reasonable to conclude that these isolated incidents do not call into question the parents' understanding of CUSD's instructions or their reasonable reliance on them.

CUSD also contends that CUSD's instructions could not have prevented the minors' parents from filing a government claim because an attorney is not necessary for

17

such a filing. It is well-settled, however, that a public entity may be estopped where it has prevented a prospective claimant from obtaining legal advice. (See *Christopher P.*, *supra*, 19 Cal.App.4th at p. 170; *Fredrichsen v. City of Lakewood*, *supra*, 6 Cal.3d at p. 357.) The fact that an attorney is not required is not dispositive in these circumstances. Similarly, Chris's testimony that he had not considered filing a civil lawsuit prior to Firth's sentencing does not mean that equitable estoppel is unavailable. It is sufficient, under the circumstances here, that CUSD's statements prevented Chris (and the other parents) from seeking legal assistance to explain their rights and remedies regarding CUSD's conduct.

Even if estoppel applies, CUSD argues that the parents' government claims were still untimely because they did not file within six months after the effect of CUSD's statements had ended. CUSD argues that the effect ended either (1) when Christina was told that the criminal investigation into Firth had stalled, (2) when the parents testified at Firth's preliminary hearings, or (3) when E.'s father Chris posted his public (though anonymous) internet comment. We disagree. CUSD's instructions expressly referenced the success of Firth's criminal prosecution. Until Firth had been successfully prosecuted, or the prosecution definitively ended, the CUSD's statements still had influence over J. and E.'s parents.

Contrary to CUSD's suggestion, the fact that the investigation had "stalled" did not remove the stated purpose for keeping quiet because successful prosecution was still possible. Indeed, the investigation eventually resumed, and Firth was prosecuted and convicted. Similarly, the fact that the parents' testimony, and Chris's anonymous

18

comment, brought the parents and the molestation incident into the public eye also did not remove the purpose of CUSD's instruction to keep quiet. Under the CUSD's instruction, preventing public knowledge of the molestation incidents was not the animating factor; the successful prosecution of Firth was. The parents could reasonably believe, and the jury could reasonably find, that CUSD's statements still had effect even after the events cited by CUSD because Firth's prosecution had not been completed.

II

Even if the issue of equitable estoppel is triable, CUSD contends that the court erred in not instructing the jury with CACI No. 456. (See fns. 3 and 4, *ante*.) CUSD argues that the omission of the fourth element of the CACI instruction, that the CUSD's statements "proved not to be true," misstated the law by omitting the requirement that CUSD's statements be misleading. We independently review a claim of instructional error, as the underlying question is one of law, involving the determination of applicable legal principles. (*People v. Alvarez* (1996) 14 Cal.4th 155, 217; see *National Medical Transportation Network v. Deloitte & Touche* (1998) 62 Cal.App.4th 412, 427.)

The omitted element of the CACI instruction, as modified and proposed by CUSD, reads as follows: "That after the limitation period had expired, [CUSD's] representations by words or conduct proved not to be true[.]" As we have discussed, however, equitable estoppel is available in circumstances where a factual misrepresentation has not occurred, including where a public entity or its agents effectively make threats against a prospective claimant. (See *John R.*, *supra*, 48 Cal.3d at p. 445; *Ortega*, *supra*, 64 Cal.App.4th at p. 1047; *Christopher P.*, *supra*, 19 Cal.App.4th at p. 173.) The fourth

19

element of CACI No. 456 is not required in such cases; the "truth" of the threat is irrelevant.

Here, the evidence showed that CUSD administrators instructed J., E., and their parents not to talk with anyone about the molestation incidents. They warned the families that failure to follow this instruction would jeopardize the investigation and criminal prosecution of their daughter's attacker. As we have explained, the facts of this case support the application of equitable estoppel even absent evidence that CUSD's statements "proved not to be true." As such, the trial court did not err in omitting the fourth element of CACI No. 456. Because we find no error, we need not consider CUSD's arguments regarding prejudice.

III

A

CUSD further contends that the court erred by failing to include separate questions on each element of equitable estoppel in the special verdict form submitted to the jury. CUSD argues that the verdict returned by the jury is fatally defective without those questions because it included only a subset of the factual findings necessary to support estoppel.

"The verdict of a jury is either general or special. A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant; a special verdict is that by which the jury find the facts only, leaving the judgment to the Court. The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those

20

conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law." (Code Civ. Proc., § 624.)

"This procedure presents certain problems: ' "The requirement that the jury must resolve every controverted issue is one of the recognized pitfalls of special verdicts. '[T]he possibility of a defective or incomplete special verdict, or possibly no verdict at all, is much greater than with a general verdict that is tested by special findings . . . .' [Citation.]" [Citation.]' " (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 285.) "A special verdict is 'fatally defective' if it does not allow the jury to resolve every controverted issue." (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 325; but see *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1244-1245 [applying harmless error analysis].) "[A] special verdict's correctness is analyzed as a matter of law and therefore subject to de novo review." (*Zagami v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1092.)

The verdict returned by the jury contained two questions on the issue of estoppel: "3. Should Carlsbad Unified School District be estopped from asserting that [the minor's] parents filed a late government claim on [the minor's] behalf because Carlsbad Unified School District did or said something that caused [the minor's] parents to delay in filing a claim?" and "4. Did [the minor's] parents file a government claim on [the minor's] behalf with Carlsbad Unified School District within six months after the effect of the delay-inducing conduct ended?" The jury answered each question in the affirmative.

We conclude that these questions adequately presented the issue of estoppel to the jury. Contrary to CUSD's contention, Question 3 does not simply recite one of the

21

elements of estoppel. Instead, it asks generally whether CUSD "should be estopped from asserting that [the minor's] parents filed a late government claim . . . ." This language presented the issue of estoppel as a whole to the jury in a single question. The jury's affirmative answer shows that it determined that estoppel should apply. The remainder of Question 3 reflects the preamble of the court's instructions on estoppel (as well as the preamble of CACI No. 456) where estoppel is generally described: "Each plaintiff claims that even if her government claim was not filed on time, she may still proceed because [CUSD] *did or said something that caused plaintiff's parents to delay filing the government claim*. In order to establish the right to proceed, each plaintiff must prove all of the following . . . ." (Emphasis added.) This language confirms that Question 3 is directed at estoppel generally. The jury's affirmative answers to Question 3, as well as Question 4, adequately resolved the issue of estoppel; no fatal deficiency appears in the verdict.

The fact that part of the language of Question 3 also appears in the first element of the court's estoppel jury instructions does not compel a different conclusion. Question 3 asked generally, "[s]hould CUSD be estopped," which demonstrates that Question 3 was not limited to that element. " 'A verdict should be interpreted so as to uphold it and to give it the effect intended by the jury, as well as one consistent with the law and the evidence.' " (*All-West Design, Inc. v. Boozer* (1986) 183 Cal.App.3d 1212, 1223.) The verdict form here was sufficient.

22

B

In its reply brief, CUSD appears to adopt an alternate framing of its contention in response to the minors' arguments. CUSD claims that the court's failure to include additional questions setting forth the elements of equitable estoppel was an abuse of discretion, primarily because it provided the jury with an inadequate understanding of the law of equitable estoppel. The two frames of reference are not necessarily incompatible, since a verdict form may not be fatally defective (because it covers all of the disputed issues in a case) but could still constitute an abuse of discretion for other reasons.

"The use of special interrogatories in a verdict form lies within the sound discretion of the trial court, and the court's determination will not be disturbed on appeal absent a clear abuse of discretion." (*Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 364 (*Red Mountain*).) This court's decision in *Red Mountain* is instructive. In *Red Mountain*, this court considered a breach of contract verdict form that did not specifically address the defendant's defenses of impossibility or impracticability of performance. (*Ibid.*) This court found no abuse of discretion, and no prejudice, because the court had adequately instructed the jury that it could not find breach if those defenses had been established. (*Ibid.*) The jury's finding that breach had occurred showed the jury rejected the defendant's defenses: "We presume that the jury followed the instructions it was given (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 803), and that it would not have found that [defendant] breached its agreement . . . if it had found that [defendant's] performance was impossible or impracticable." (*Red Mountain*, *supra*, pp. 364-365.)

23

An analogous situation is presented by the verdict form here. As we have explained, the verdict addressed the issue of estoppel generally in Question 3, as supplemented by Question 4. The court also fully instructed the jury on the proof required in order for estoppel to be established.[7] The court did not abuse its discretion by not repeating those instructions as questions in the special verdict form. (See *Red Mountain*, *supra*, 143 Cal.App.4th at p. 364.) CUSD's attempt to distinguish *Red Mountain* is unpersuasive because CUSD's argument does not address the relevant discussion of the breach of contract verdict form in *Red Mountain.* Instead, CUSD focuses on an irrelevant discussion of duplicative damages. (See *id.* at p. 365.) CUSD's reliance on *Holdgrafer v. Unocal Corp.* (2008) 160 Cal.App.4th 907 is also unavailing. While the trial court in that case used a special verdict form that required specific findings on each element of equitable estoppel, *Holdgrafer* does not mandate, or even imply, that such a special verdict is necessary. (See *id.* at p. 926.)

CUSD also has not established prejudice as a result of any purported error in the special verdict form. CUSD speculates that the jury could have found differently had the elements of estoppel been repeated as separate questions.[8] We disagree. "Absent some contrary indication in the record, we presume the jury follows its instructions [citations]

---

[7] To the extent CUSD repeats its contention that those instructions were substantively inadequate, we have already addressed CUSD's argument in part II, *ante*.

[8] CUSD also cannot establish prejudice by relying on the element of estoppel that it contends was erroneously omitted from the jury instructions. For the same reason that the court was not required to include that element in its jury instructions (see part II, *ante*), the court also was not required to include it as an element in the verdict form.

24

'and that its verdict reflects the legal limitations those instructions imposed' [citation]." (*Cassim v. Allstate Ins. Co.*, *supra*, 33 Cal.4th at pp. 803-804.) In finding that CUSD should be estopped, the jury necessarily found that each of the elements of estoppel had been proven. Repeating those elements in the special verdict form would not have changed the jury's decision. (See *Red Mountain*, *supra*, 143 Cal.App.4th at p. 364.)

IV

CUSD challenges the jury's award of $200,000 in economic damages to each minor for future medical costs. CUSD contends the court erred by denying its motion for a new trial because the evidence did not support the amount of such damages. CUSD points to the testimony of the minors' psychological expert, Dr. Clark Clipson, who opined that the minors would each need approximately $30,000 in psychological and psychiatric care over the next few years. During closing arguments, the minors' counsel referenced Clipson's testimony and asked the jury to award this amount as future medical costs.

"An injured plaintiff is entitled to recover the reasonable value of medical services that are reasonably certain to be necessary in the future." (*Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1330.) "Appellate review of a fact finder's award of damages is limited. [Citation.] In the absence of error in the admission of testimony supporting a claim of economic damages . . . we will affirm the judgment if substantial evidence supports the damage award." (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1321-1322.) "It is for the jury to determine the probabilities as to whether future detriment is reasonably certain to occur in any particular case. [Citation.]

25

It is 'not required' for a doctor to 'testify that he [is] reasonably certain that the plaintiff would be disabled in the future. All that is required to establish future disability is that from all the evidence, including the expert testimony, if there be any, it satisfactorily appears that such disability will occur with reasonable certainty. [Citations.]' [Citation.] The fact that the amount of future damages may be difficult to measure or subject to various possible contingencies does not bar recovery." (*Garcia v. Duro Dyne Corp.* (2007) 156 Cal.App.4th 92, 97-98 (*Garcia*).)

Where, as here, the trial court has denied a motion for new trial based on excessive damages, the trial court's decision should " 'be accorded great weight because having been present at the trial the trial judge was necessarily more familiar with the evidence.' " (*Ortega*, *supra*, 64 Cal.App.4th at pp. 1059-1060.) In *Ortega*, for example, "the only evidence [the minor] submitted of economic damages to date were receipts for counseling she has incurred since the molestation in the amount of $744. However, [the minor] also testified at length of the emotional problems she has suffered and continues to suffer because of the molestation and its aftermath." (*Id.* at p. 1060.) "After considering [the minor's] testimony, the jury (and the trial judge when ruling on the new trial motion) could reasonably conclude that [the minor] might require $49,256 in future psychiatric expenses." (*Ibid.*)

J. and E. presented similar evidence of the psychological trauma they suffered, and continue to suffer, because of Firth's conduct. Clipson diagnosed both minors with multiple medical conditions. He opined that they would be at a higher risk for future psychological problems, which could be triggered by such normal life events as

26

adolescence, dating, and sexual experiences. Family members testified that J. and E. still suffered physically and psychologically as a result of Firth's molestation. Clipson opined, "I feel that both of them need treatment within the next few years specifically for the incidents related to Mr. Firth. And I think they're probably going to need treatment down the road when their symptoms are triggered by other events later in life." Based on this evidence, the general rates for psychological and psychiatric services provided by Clipson, and Clipson's specific recommendation of $30,000 in medical care over the next couple years, the jury was entitled to find that J. and E. would require $200,000 in future medical costs over the course of their lives.[9] (See *Ortega*, *supra*, 64 Cal.App.4th at p. 1060.) An award of future medical expenses requires reasonable certainty, which can be based on lay testimony, expert testimony, or a combination of the two. (*Garcia.*, *supra*, 156 Cal.App.4th at pp. 97-98.) Clipson was not required to testify that J. and E. would suffer $200,000 in future damages for the jury to make such an award. (See *ibid.*; see also *Ortega*, *supra*, 64 Cal.App.4th at p. 1060.)

Clipson's belief that the minors would require $30,000 each in future medical costs was not a limit, as CUSD claims. Nor did Clipson testify that the minor's medical care "would cost $30,000 for the life of each plaintiff," as CUSD also claims. Clipson testified that the $30,000 figure would cover only his recommendations for the next year

---

9      As our discussion demonstrates, CUSD's contention that the evidence on the subject of future medical expenses was "minimal" is unsupported. The minors provided both lay and expert testimony regarding their psychological damage as a result of Firth's molestation and the probable future harm they will suffer.

27

or two.[10]  And, in any event, " '[t]echnical arguments about the meaning and effect of expert testimony on the issue of damages are best directed to the [fact finder].' " (*Pannu*, *supra*, 191 Cal.App.4th at p. 1322.)  " 'Damages, even economic damages, are difficult to measure in personal injury cases.' "  (*Pannu, supra*, 191 Cal.App.4th at p. 1322.)  The task of measuring such damages falls to the jury, however, and its resolution of disputed issues of probability and extent of harm will be affirmed if supported by substantial evidence.  (*Garcia., supra*, 156 Cal.App.4th at p. 97; *Pannu*, *supra*, 191 Cal.App.4th at p. 1322.)  As we have explained, the jury was entitled to make their award based on the evidence, both lay and expert, of future harm to J. and E. as they progressed through their lives.  (See *Ortega*, *supra*, 64 Cal.App.4th at p. 1060.)

The fact that the minors' counsel used the $30,000 figure in closing arguments also does not compel the conclusion that the jury's damages award was excessive.  The minors' counsel prefaced his argument with the disclaimer that the jury might find his suggested amounts too low: "And you might think my amounts are too low, but it's your job to figure out and determine what is going to compensate these girls."  Moreover, "[i]t is elementary statements of the attorneys are not evidence."  (*Van de Kamp v. Bank of America Nat'l Trust & Sav. Ass'n* (1988) 204 Cal.App.3d 819, 843.)  Based on the

---

10  Specifically, the minors' counsel asked Clipson, "And do you have an opinion as to the amount of therapy that J. needs over the next year or two?"  Clipson answered, "Yes.  With the psychotherapy twice a week for approximately a year, the meetings with the psychiatrist generally weekly until she's stabilized on her medication and then she can be seen once every two months after that."  The minors' counsel then asked, "And the total cost in your estimation?"  Clipson responded, "Approximately $30,000."  Clipson's recommendations as to E. were substantially the same.

28

evidence, the jury was entitled to find that J. and E. were entitled to future medical costs beyond the $30,000 figure suggested by counsel.  The trial court did not err in denying CUSD's motion for a new trial.

## DISPOSITION

The judgment and postjudgment orders are affirmed.  J. P. and E. B. are entitled to costs on appeal.


NARES, Acting P. J.

WE CONCUR:


McDONALD, J.


IRION, J.

29

CERTIFIED FOR PUBLICATION

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

J.P., a Minor, etc. et al.,
Plaintiffs and Respondents,
v.
CARLSBAD UNIFIED SCHOOL DISTRICT,
Defendant and Appellant.

**D062912**
**San Diego County No. 37-2010-00060475-CU-PO-NC**
**San Diego County No. 37-2010-00060474-CU-PO-NC**

THE COURT:

The opinion in this case filed November 19, 2014 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request by Taylor & Ring, LLP, and Esner, Chang & Boyer pursuant to California Rules of Court, rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

_____NARES_____
Acting Presiding Justice

cc: All Parties