Filed 9/26/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PATRICIA RODRIGUEZ,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PARIVAR, INC., et al.,<br><br>    Defendants and Appellants. | A158939, A160694<br><br>(Alameda County Super. Ct.<br>No. RG-17-847828) |

By a split vote of 9 to 3, Patricia Rodriguez won a jury verdict against Parivar, Inc. and Yadav Enterprises, Inc. (collectively Parivar) for failure to pay her overtime wages during the 23-month period she was employed as a salaried manager at a Jack in the Box restaurant in San Leandro. This appeal is from the ensuing judgment and a postjudgment order against Parivar for, respectively, $38,356.75 in unpaid overtime plus prejudgment interest, and $932,842.63 in attorney fees and costs.

The primary focus of the appeal is a special verdict question that was designed to elicit a finding of ultimate fact on Parivar's affirmative defense of executive exemption. When asked whether "Ms. Rodriguez performed exempt duties more than half of the time," the jury answered "No." According to Parivar, the narrow framing of this question effectively barred it from proving its executive exemption defense by allowing the jury to find liability without addressing the issue of Parivar's realistic expectations for how Rodriguez should have allocated her time.

1

We agree that the challenged special verdict question was erroneous and that the error was prejudicial. Accordingly, we reverse the judgment and vacate the award of fees and costs, without reaching any of Parivar's other arguments attacking the judgment or the merits of its attack on the award of fees and costs.

## I. BACKGROUND

In February 2017, Rodriguez filed a complaint against Parivar[1] alleging, among other things, causes of action for Parivar's failure to pay her overtime and provide her with meal periods and rest periods required under California's labor laws.

Rodriguez alleged that Parivar misclassified her as an exempt employee, contending that she "spent the majority of her time performing the exact same duties as non-exempt employees" at her restaurant. By way of affirmative defense, Parivar argued that under the Industrial Welfare Commission (IWC) wage order No. 5-2001's "executive exemption" Rodriguez was exempt from overtime, meal period and rest period requirements.

The case proceeded to a jury trial over a two-week period in May 2019. The jury rejected Parivar's executive exemption affirmative defense. By a 9 to 3 vote, the jury found Parivar failed to prove that, as the special verdict question put it, "Rodriguez performed exempt duties more than half of the time."

---

[1] The complaint names as defendants Parivar, Inc. and JIB Management, Inc. (and also Jack in the Box, Inc., the claims against which were later dismissed with prejudice). Parivar, Inc. and Yadav Enterprises, Inc., appellants here, answered the complaint, with Yadav Enterprises, Inc. answering instead of JIB Management, Inc. The parties indicated in their papers below that Yadav Enterprises, Inc. was formerly known as JIB Management, Inc. At trial, the parties stipulated that Parivar, Inc. and Yadav Enterprises, Inc. were Rodriguez's joint employers.

The jury further found that Rodriguez proved Parivar knew or should have known that she worked more than eight hours a day, that Rodriguez worked an average of 9.73 overtime hours a week and that she was owed $26,786.54 in overtime pay. The jury also found that Rodriguez did not prove that Parivar failed to provide her with proper meal periods and rest periods.

The trial court entered judgment in Rodriguez's favor, ordering Parivar to pay her $26,786.54 in overtime pay and $11,570.21 in prejudgment interest, for a total of $38,356.75. It further ruled that Rodriguez was entitled to costs and attorney fees under Code of Civil Procedure sections 1032 and 1033.5 and California Rules of Court, rules 3.1700 and 3.1702.

Subsequently, the trial court rejected Parivar's motions for a new trial and for a judgment notwithstanding the verdict. It later ordered Parivar to pay Rodriguez $932,842.63 in attorney fees and litigation costs.

Parivar, Inc. and Yadav Enterprises, Inc. separately filed timely notices of appeal from the judgment, unspecified orders after the judgment and the denial of their motion for judgment notwithstanding the verdict. Parivar, Inc. and Yadav Enterprises, Inc. also separately filed timely notices of appeal from the court's attorney fees award order.

## II. DISCUSSION

### A. *Parivar's Executive Exemption Affirmative Defense*

Although the Labor Code "mandates overtime pay for employees who work more than 40 hours in a given work week[,] . . . the Legislature authorized the [IWC[2]] to establish exemptions for various categories of

---

[2] The IWC was defunded in 2004, but its wage orders remain in effect. (*Wesson v. Staples the Office Superstore, LLC* (2021) 68 Cal.App.5th 746, 760, fn. 2 (*Wesson*).) "The California Supreme Court has instructed that '[t]he IWC's wage orders are to be accorded the same dignity as statutes.'" (*Ibid.*, quoting *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1027.)

employees, including 'executive . . . employees.' " (Lab. Code, §§ 510, subd. (a), 515, subd. (a); *Batze v. Safeway, Inc.* (2017) 10 Cal.App.5th 440, 471.)

Our Supreme Court has instructed, "When construing the Labor Code and wage orders, we adopt the construction that best gives effect to the purpose of the Legislature and the IWC. [Citations.] Time and again, we have characterized that purpose as the protection of employees—particularly given the extent of legislative concern about working conditions, wages, and hours when the Legislature enacted key portions of the Labor Code. [Citations.] In furtherance of that purpose, we liberally construe the Labor Code and wage orders to favor the protection of employees." (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 262.)

IWC wage order No. 5-2001 (wage order), which governs employees in the "public housekeeping industry"[3] and is codified in the California Code of Regulations, exempts "executive" employees from overtime pay, meal period and rest period requirements. (Cal. Code Regs., tit. 8, § 11050, subds. 1(B)(1), 3, 11, 12.) This exemption is an affirmative defense, for which the employer bears the burden of proof. (See *Safeway Wage & Hour Cases* (2019) 43 Cal.App.5th 665, 671, 676 (*Safeway*) [regarding a similar executive exemption for the mercantile industry found at Cal. Code Regs., tit. 8, § 11070, subd. 1(A)(1)].)

At trial, Parivar asserted the executive exemption affirmative defense against Rodriguez's claims. In the public housekeeping industry, "[a] person

---

[3] "Public Housekeeping Industry" is defined as "any industry, business, or establishment which provides meals . . . as a primary business . . . ," including restaurants and similar establishments. (Cal. Code Regs., tit. 8, § 11050, subd. (2)(P).) The parties do not dispute that Parivar's business comes within this definition.

4

employed in an executive capacity" means any employee whose work meets the six prongs of the exemption, including that the employee is "primarily engaged in duties which meet the test of the exemption." (Cal. Code Regs., tit. 8, § 11050, subd. 1(B)(1)(e).)[4] In this appeal, the parties, aside from their attorney fees award dispute, focus entirely on the trial court's special verdict form and jury instructions regarding this particular prong of Parivar's affirmative defense. The sole focus of dispute here is prong (e) of the six-factor test governing the executive exemption.

The wage order provides that "[t]he activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed" in corresponding federal regulations. (Cal. Code Regs., tit. 8, § 11050, subd. 1(B)(1)(e) [citing 29 C.F.R. §§ 541.102, 541.104–111 and 541.115–116 as they were effective on the date of the order].) Under the relevant federal regulations, managerial and supervisory tasks within the scope of the exemption are generally " 'easily recognized' " and include such tasks as: " '[i]nterviewing, selecting, and training of employees; setting and

---

[4] The six prongs that must be proven to establish that a person is employed in an "executive capacity" are that the person is someone (a) whose duties and responsibilities involve the management of an enterprise or of a customarily recognized department or subdivision thereof; (b) who customarily and regularly directs the work of two or more other employees; (c) who has the authority to hire and fire, or whose recommendations and suggestions regarding a change in an employee's status receive particular weight; (d) who customarily and regularly exercises discretion and independent judgment; (e) who is "primarily engaged in duties which meet the test of the exemption"; and (f) who earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment, defined as 40 hours a week. (Cal. Code Regs., tit. 8, § 11050, subd. 1(B)(1) (a)–(f).) At trial, the parties stipulated that prongs (a) through (c) and (f) were met; they contested only whether prongs (d) and (e) were met. The parties do not raise any issues regarding prong (d) on appeal, so we need not discuss it.

5

adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; [and] apportioning the work among the workers . . . .' " (*Safeway*, *supra*, 43 Cal.App.5th at pp. 676–677, quoting 29 C.F.R. §§ 541.102(a) & (b) (2001).)

Tasks that are inherently managerial or supervisory are not the only ones the federal regulations recognize as exempt. Also exempted are tasks " 'directly and closely related' " to those functions. (*Safeway*, *supra*, 43 Cal.App.5th at p. 677, quoting 29 C.F.R. § 541.108 (2001).) Consistent with these regulations, the wage order recognizes that "[e]xempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions." (Cal. Code Regs., tit. 8, § 11050, subd. 1(B)(1)(e).) "By contrast, nonexempt work includes all work that is neither management or supervision nor directly and closely related to those functions. (*Safeway*, *supra*, 43 Cal.App.5th at p. 678.) ' "[I]n the usual case, it consists of work of the same nature as that performed by the nonexempt subordinates of the 'executive.' " ' (*Ibid*., quoting 29 C.F.R. § 541.111(b) (2001).)" (*Wesson*, *supra*, 68 Cal.App.5th at p. 761.)

To illuminate the phrase "primarily engaged in duties which meet the test of the [executive] exemption," the wage order defines "primarily" as "more than one-half the employee's work time." (Cal. Code Regs., tit. 8, § 11050, subds. 1(B)(1)(e), 2(O).) It also instructs that in determining whether an employee is primarily engaged in such duties, "[t]he work actually performed by the employee during the course of the workweek must,

6

first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement." (Cal. Code Regs., tit. 8, § 11050, subd. 1(B)(1)(e).)

In *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785 (*Ramirez)*, which involved an "outside salesperson" exemption structured quite similarly to IWC wage order No. 5-2001, our Supreme Court explained why a simple quantitative approach to determining an employee's "primary function"—i.e., totaling up hours for types of tasks that employee actually performs—while an important and good starting place, is ultimately unsatisfactory. (*Ramirez*, at pp. 802, 793–794.) "On the one hand, if hours worked on sales were determined through an employer's job description, then the employer could make an employee exempt from overtime laws solely by fashioning an idealized job description that had little basis in reality. On the other hand, an employee who is supposed to be engaged in sales activities during most of his working hours and falls below the 50 percent mark due to his own substandard performance should not thereby be able to evade a valid exemption." (*Id.* at p. 802.)

These nuances have implications in the factfinding process, the *Ramirez* court explained. "A trial court, in determining whether the employee is an outside salesperson, must steer clear of these two pitfalls by inquiring into the *realistic* requirements of the job. In so doing, the court should consider, first and foremost, how the employee actually spends his or her time. But the trial court should also consider whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves

7

realistic given the actual overall requirements of the job." (*Ramirez, supra*, 20 Cal.4th at p. 802, italics in original.) Courts applying the executive exemption wage order have cited and drawn upon this rationale for the consideration of an employer's realistic expectations. (See *Heyen v. Safeway Inc.* (2013) 216 Cal.App.4th 795, 825; *Batze v. Safeway, Inc.*, *supra*, 10 Cal.App.5th at pp. 473–475.)

## B. *The Trial Court's Jury Instructions and Special Verdict Question*

### 1. The Jury Instructions

Using a modified version of the California Civil Jury Instruction (CACI) No. 2720, the trial court instructed the jury that Parivar had to prove as part of its executive exemption affirmative defense that "Ms. Rodriguez performed exempt duties more than half of the time." The court further instructed, "In determining whether Ms. Rodriguez performed exempt duties more than half of the time, the most important consideration is how she actually spent her time. But you should also consider whether Ms. Rodriguez's practice differed from [Parivar's] realistic expectations of how Ms. Rodriguez should spend her time and the realistic requirements of the job." The court also instructed, "Each of Ms. Rodriguez's activities is either an exempt or a nonexempt activity depending on the primary purpose for which she undertook it at that time. Time spent on an activity is either exempt or nonexempt, not both."

In addition, the court gave the jury a series of special instructions. These included special instruction No. 6, in which the court stated that "[t]he test to determine whether [Parivar] met [its] burden to show that Ms. Rodriguez spent more than 50% of her time engaged in exempt tasks is quantitative. [¶] The test requires that, first and foremost, you must look to the actual tasks performed by Ms. Rodriguez."

In special instruction No. 7, the court instructed on exempt versus nonexempt work: "Exempt work includes tasks necessary for the actual

8

management of the restaurant and the supervision of its employees.  Work that is closely related to managerial or supervisory functions, so long as it is not ordinary 'production' work, is also considered exempt work."  The court listed numerous illustrative examples of exempt and nonexempt work as a guide.[5]  The court added, "you may consider whether the manager is doing work of the same nature as work routinely done by [non-exempt] Team Members.  An otherwise non-exempt task may also be considered exempt if it is performed by Ms. Rodriguez for a separate managerial purpose such as training another employee or to respond to an occasional emergency caused by unforeseen circumstances beyond the control of the defendants."

In special instruction No. 9, the court further instructed that "[e]xempt work includes work that is directly and closely related to exempt work."  The court explained, "The supervision of employees and the management of a department include a great many directly and closely related tasks which are different from the work routinely performed by Team Members and are commonly performed by supervisors because they are helpful in supervising the employees or contribute to the smooth functioning of the department for which they are responsible."[6]

---

[5] This list includes 15 examples of exempt work, such as interviewing, selecting and training employees, directing the work of employees, planning the work, determining the techniques to be used, and appraising employees' productivity and efficiency for the purpose of recommending changes in their status; and 12 examples of nonexempt work, such as ringing up sales for customers, cashiering, bagging groceries, assisting customers with routine matters, and mopping and sweeping floors.

[6] As one example, the court noted that a department manager of a retail establishment "who goes about the sales floor observing the work of sales personnel under his supervision to determine the effectiveness of their sales techniques, checking on the quality of customer service being given, or observing customer preferences and reactions to . . . the merchandise offered,

9

In special instruction No. 13, the court instructed the jury to consider Parivar's realistic expectations regarding Rodriguez's use of her time and to consider the realistic requirements of her job: "In determining whether Ms. Rodriguez performed executive duties more than half of the time, the most important consideration is how she actually spent her time. But you should also consider [Parivar's] realistic expectations of how Ms. Rodriguez should spend her time and the realistic requirements of the job. In particular you may consider: whether Ms. Rodriguez's practice diverged from [Parivar's] realistic expectations, whether there was any concrete expression of [Parivar's] displeasure of her substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job. [¶] The reason for this rule is twofold. First, an employee is not exempt if his or her duties do not realistically allow the employee to perform exempt activities more than 50% of the time. By the same token, an employee cannot defeat the exemption by surreptitiously performing non-exempt duties that are not within the employer's realistic expectations."

## 2. The Special Verdict Question

Parivar urged the trial court to give a special verdict form that presented two questions regarding the "primarily engaged" prong of its executive exemption affirmative defense. Specifically, it proposed a question regarding whether Parivar proved that Rodriguez performed managerial or supervisorial duties more than half the time and another question asking if

---

is performing work which is directly and closely related to his managerial and supervisory functions. His actual participation, except for supervisory training or demonstration purposes, in such activities as making sales to customers, replenishing stocks of merchandise on the sales floor, removing merchandise from fitting rooms and returning to stock shelves, however, is not."

Parivar reasonably expected her to do so.  Rodriguez argued only one question was necessary—which was, as her counsel stated at one hearing, whether Parivar proved Rodriguez "performed executive exempt tasks more than half of the time."  Rodriguez contended that the issue of Parivar's realistic expectations was subsumed within that question.

The court, after hearing argument by the parties and considering the matter, expressed its concern that if it asked more than one question, *Ramirez* and the wage order would require so many intermediate fact questions that the special verdict form would become "far too detailed and far too close to what the jury instructions are."  The court decided it would ask just one ultimate fact question along the lines of whether Parivar proved Rodriguez "performed duties more than half of the time."  Ultimately, the court asked the jury to answer yes or no to the following question on a special verdict form:  "Did [Parivar] prove that Patricia Rodriguez performed exempt duties more than half of the time?"[7]  The jury answered "No" to this question.

---

[7] The special verdict form contains 16 questions.  It states in relevant part:

"2. Did Defendants prove that Patricia Rodriguez performed exempt duties more than half of the time?

"YES [ ]  NO [ ]

"If you answered 'yes,' sign and date this verdict form where indicated and return it to the clerk of the court (you should not answer any more questions).  If you answered 'no,' proceed to Question 3."

Questions 3 through 6 asked the jury questions regarding Rodriguez's unpaid overtime claim.  The other questions were regarding whether Parivar proved Rodriguez had customarily exercised discretion and independent judgment (to which the jury answered "yes"), Rodriguez's meal period and rest period claims and her total damages.

## C. *The Special Verdict Question Was Defective*

### 1. Relevant Legal Standards

" 'The verdict of a jury is either general or special. A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant; a special verdict is that by which the jury find the facts only, leaving the judgment to the Court. The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law.' (Code Civ. Proc., § 624.)" (*J.P. v. Carlsbad Unified School Dist.* (2014) 232 Cal.App.4th 323, 338 (*Carlsbad Unified School Dist.*).)

"The elements of a cause of action constitute the essential or ultimate facts in a civil case." (*Stoner v. Williams* (1996) 46 Cal.App.4th 986, 1002.) "Ultimate facts are distinguished from evidentiary facts and from legal conclusions." (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513 ["the term 'ultimate fact' generally refers to a core fact, such as an essential element of a claim"]; see *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550 [a complaint is ordinarily sufficient if it pleads ultimate rather than evidentiary facts, meaning " ' " 'the essential facts of [a plaintiff's] case' " ' "].)

"We analyze the special verdict form de novo. (*City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 678 [' "[A] special verdict's correctness must be analyzed as a matter of law" '].)" (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 325; accord, *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1242.) "A special verdict is 'fatally defective' if it does not allow the jury to resolve every controverted issue." (*Saxena*, at p. 325.)

## 2. Analysis

Parivar argues the special verdict question that dictated the outcome on its executive exemption defense ("Did [Parivar] prove that Patricia Rodriguez performed exempt duties more than half of the time?") was fatally defective because it did not allow the jury to resolve a key controverted issue—Parivar's "realistic expectations" of Rodriguez's use of her time. Parivar contends the court should have required the jury to reach a factual conclusion on the realistic expectations issue because it was "a mandatory consideration under the 'primarily engaged' requirement of the executive exemption." Instead, Parivar argues, the court improperly asked only the first part of this "primarily engaged" prong, a quantitative inquiry that required it to determine whether Rodriguez worked more than 50 percent of the time at "exempt duties." Rodriguez, for her part, argues the trial court's special verdict question regarding the "primarily engaged" prong was not defective because it asked a question of ultimate fact. Further, even if it were defective, she contends, the error was harmless because there is overwhelming support in the record for the jury's conclusion that Parivar failed to prove the "primarily engaged" prong of its executive exemption affirmative defense.

We disagree with Parivar that the trial court was required to ask the jury two questions, i.e., whether Parivar had realistic expectations for Rodriguez's work along with the special verdict question actually posed by the court. Whether one considers Parivar's "realistic expectations" to be an issue of evidentiary fact (as argued by Rodriguez) or a critical element (as argued by Parivar), it is only one of several matters the jury was required to consider in determining whether Rodriguez was, as the wage order requires, "primarily engaged in duties which meet the test of the [executive] exemption." (Cal. Code Regs., tit. 8, § 11050, subd. 1(B)(1)(e).) These matters

13

include the amount of time Rodriguez spent on the work she actually performed and the realistic requirements of her job (*ibid.*), and also " 'whether [Rodriguez's] practice diverge[d] from [Parivar's] realistic expectations, whether there was any concrete expression of employer displeasure over [Rodriguez's] substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job.' " (*Wesson*, *supra*, 68 Cal.App.5th at p. 762, quoting *Ramirez*, *supra*, 20 Cal.4th at p. 802.)

The two questions Parivar proposed, by themselves, do not cover all of these considerations. Alone, or together, they would not have provided the court with a decision on an ultimate fact. That is, they would not have supplied a factual conclusion that left the trial court with nothing to do but draw conclusions of law (see Code Civ. Proc., § 624; *Carlsbad Unified School Dist.*, *supra*, 232 Cal.App.4th at p. 338) because it would not reach conclusions on *all* the matters that it was required to consider.

Parivar cites several authorities in support of its argument to the contrary. The appellate court in *Saxena v. Goffney*, *supra*, 159 Cal.App.4th 316, found error where a jury was asked whether the plaintiff gave his "informed consent" to a medical procedure, an element of a medical negligence claim, but was not asked if the plaintiff gave " 'no consent' at all," although this was an essential element of the plaintiff's separate battery claim. (*Id.* at pp. 326–327.) In *Trejo v. Johnson & Johnson* (2017) 13 Cal.App.5th 110, error was found on appeal where the trial court failed to include a special verdict question that would have "resolve[d] a necessary element of a negligent failure to warn claim." (*Id.* at p. 137.) In *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, the appellate court struck a punitive damages award where the jury, in returning a special verdict for breach of contract, determined the defendants

14

had acted with oppression, fraud or malice, but did not determine whether a tort for which punitive damages could be awarded had been committed. (*Id.* at pp. 956–962.) And in *Fuller-Austin Insulation Co. v. Highlands Ins. Co* (2006) 135 Cal.App.4th 958, which in turn relied on *Myers Building Industries, Ltd.*, an appellate panel found error where the trial court did not ask the jury to determine whether a settlement challenged by an excess insurer was reasonable, even though the insurer was entitled to defend against the insured's indemnity claim on that ground. (*Fuller-Austin Insulation Co.*, at pp. 1005–1006.)

These cases found fault with special verdict forms that failed to ask the jury to make determinations regarding all of the essential elements of certain causes of action or, in the case of *Myers Building Industries, Ltd.*, failed to ask the jury to find liability for the necessary cause of action itself. But that is not what Parivar argues here. Whether one considers Parivar's "realistic expectations" to be an issue of evidentiary fact or an essential element, it is only one of several matters of equal importance that the jury was required to consider to determine if Parivar had proved the "primarily engaged" prong of its executive exemption affirmative defense. Because Parivar's proposed two questions would fail to ask the jury to make findings on all these matters, we reject its argument.

This, however, is not the end of our analysis. As mentioned above, a special verdict question " 'must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law.' (Code Civ. Proc., § 624.)" (*Carlsbad Unified School Dist.*, *supra*, 232 Cal.App.4th at p. 338.) Contrary to Rodriguez's contentions, the trial court's special verdict question failed to meet this statutory requirement. As Parivar puts it, the question was "only

15

part of the necessary inquiry." (See Cal. Code Regs., tit. 8, § 11050, subd. 1(B)(1)(e) ["The work actually performed by the employee during the course of the workweek must, first and foremost, be examined *and the amount of time the employee spends on such work*, *together with the employer's realistic expectations and the realistic requirements of the job, shall be considered . . .* " (italics added)]; see also *Wesson, supra*, 68 Cal.App.5th at p. 762 [listing additional issues to consider].)

There was, to be sure, an ultimate fact question the court could have asked the jury regarding the "primarily engaged" test. The wage order required that the jury find whether Parivar proved that Rodriguez was "primarily engaged in duties which meet the test of the [executive] exemption." (Cal. Code Regs., tit. 8, § 11050, subd. 1(B)(1)(e).) *This* is the basis for a proper ultimate fact question, e.g., "Did [Parivar] prove that Patricia Rodriguez performed duties *which met the test of the exemption* more than half of the time?"[8] It is a materially different question than whether Rodriguez spent more than half of her time[9] performing "exempt duties." And the difference is not merely semantic. That is because duties which "meet the test of the exemption" include not only (1) directly "exempt duties"—i.e., "managerial and supervisory tasks" (*Safeway, supra*, 43 Cal.App.5th at pp. 676–677, quoting 29 C.F.R. §§ 541.102(a) & (b) (2001))—but also (2) "work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt

---

[8] We do not mean to imply that the trial court here was necessarily barred from asking a jury to reach conclusions on multiple questions of ultimate fact in determining the factual merits of Parivar's executive exemption affirmative defense. This question is not before us.

[9] As we have discussed, this is another way of stating whether she was "primarily" engaged. (See Cal. Code Regs., tit. 8, § 11050, subd. 2(O).)

16

functions" (Cal. Code Regs., tit. 8, § 11050, subd. 1(B)(1)(e); see *Safeway*, at p. 677 [referring to tasks " 'directly and closely related' " to managerial or supervisory tasks as its own category of "exempt tasks"]), and (3) work that, while nonexempt, is the result of the employee's own substandard performance as an executive that diverges from the employer's realistic expectations and realistic job requirements (Cal. Code Regs., tit. 8, § 11050, subd. 1(B)(1)(e); *Wesson, supra*, 68 Cal.App.5th at p. 762 [" 'an employee who is supposed to be engaged in [exempt tasks] during most of his [or her] working hours and falls below the 50 percent mark due to his [or her] own substandard performance should not thereby be able to evade a valid exemption' "], quoting *Ramirez, supra*, 20 Cal.4th at p. 802).  By asking the jury about "duties which meet the test of the [executive] exemption," the trial court would have posed a question of ultimate fact, under which the several matters the jury was to consider in determining the nature of Rodriguez's duties, including Parivar's realistic expectations, would have been subsumed.

As Rodriguez points out, a special verdict question is proper when it presents a question of ultimate fact to the jury, and the court is not necessarily required to give questions to the jury regarding all of the subsidiary matters it must consider in answering this question.  For example, in *Carlsbad Unified School Dist.*, *supra*, 232 Cal.App.4th 323, a special verdict form asked:  " 'Should Carlsbad Unified School District be estopped from asserting that [the minor's] parents filed a late government claim on [the minor's] behalf because Carlsbad Unified School District did or said something that caused [the minor's] parents to delay in filing a claim?' " (*Id.* at p. 339.)  The appellate court rejected the school district's argument that the trial court erred by not including a separate question on each element of estoppel.  (*Id.* at pp. 338–339.)  The court, relying on the rule that a special verdict form should ask about conclusions of fact and not about the evidence

17

to prove those conclusions, held that the verdict form adequately "presented the issue of estoppel as a whole to the jury as a single question." (*Id.* at p. 339.) It further concluded that "[t]he [trial] court also fully instructed the jury on the proof required in order for estoppel to be established. The court did not abuse its discretion by not repeating those instructions as questions in the special verdict form." (*Id.* at p. 340, fn. omitted.)[10]

Unfortunately, the trial court here, while it did provide instructions regarding all of the matters underlying Parivar's executive exemption affirmative defense, did not ask the jury in the special verdict form to answer a sufficiently broad question of ultimate fact regarding the "primarily engaged" prong of that defense. With Parivar, we agree that the question the court posed was unduly restrictive and therefore erroneous.

The special verdict question—which asks whether "Ms. Rodriguez performed exempt duties more than half of the time"—has the virtue of simplicity, but the simplicity came at the cost of nuance on a nuanced point of law. It leaves the distinct impression that the relevant inquiry is essentially quantitative, a matter of counting up hours that qualify as something called "exempt duties." But that undefined term has no counterpart in special

---

[10] Rodriguez also relies on *Markow v. Rosner* (2016) 3 Cal.App.5th 1027, where the appellate court rejected the argument that a special verdict form should have included questions about the plaintiffs' alternative theories of negligence in regard to their one negligence cause of action. (*Id.* at p. 1047.) The court held that the form "properly required the jury to make findings only as to ultimate facts" and that "[i]ncluding questions that separately addressed each of plaintiffs' theories of negligence would have required the jury to decide evidentiary facts, in contravention of [Code of Civil Procedure] section 624." (*Ibid.*) *Markow* is of only limited value to Rodriguez, however, because she does not establish that questions about such matters as Parivar's "realistic expectations" were mere evidentiary facts rather than essential elements of Parivar's executive exemption affirmative defense, an issue that we need not and do not decide.

18

instruction No. 13, which uses the term "executive duties," not "exempt duties." This created a mismatch in the language of the special verdict question and in the only instruction specifically designed to guide the jury in answering it. One sentence in special instruction No. 13 does, to be sure, gesture in the right direction—telling the jury "you should also consider [Parivar's] realistic expectations of how Ms. Rodriguez should spend her time and the realistic requirements of the job"—but ultimately that directive leads nowhere because it fails to inform the jury what significance the employer's "realistic expectations" should be given in the formulation of an answer.

These are not the only problematic aspects of the way the jury instructions deal with Parivar's executive exemption defense. There are other points of imprecision. On the one hand, for example, the instructions state that the jury, "[i]n determining whether Ms. Rodriguez performed exempt duties more than half of the time," should most importantly consider "how she actually spent her time," but also should consider "whether Ms. Rodriguez's practice differed from [Parivar's] realistic expectations of how Ms. Rodriguez should spend her time and the realistic requirements of the job." On the other hand, the instructions, in discussing the various matters the jury is to consider, include references to categories of work that are not intended to encapsulate all duties which meet the test of the executive exemption, such as references to "exempt or non-exempt activity," "[e]xempt work," "executive duties," and "exempt activities"—all undefined terms raising questions about whether they mean the same thing. That compounded the terminological confusion.

Despite the instructional ambiguities the jury faced in trying to answer the critical special verdict question addressing Parivar's affirmative defense of executive exemption, Rodriguez insists that we must affirm under the principle that a jury is presumed to have followed the instructions it was

19

given. But the cases she relies upon involved situations in which a challenged special verdict form, read together with accompanying jury instructions, provided full and complete legal guidance. (See *Carlsbad Unified School Dist.*, *supra*, 232 Cal.App.4th at p. 340 ["The court . . . fully instructed the jury on the proof required in order for estoppel to be established"]; *Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 364–365 & fn. 21 [trial court's refusal to include contract defenses of impossibility or impracticability in special verdict question asking about breach was not erroneous because the jury instructions addressed those defenses].) We cannot say that here. The trial court failed altogether to ask a question on a determinative issue of ultimate fact, properly phrased to encompass as subsidiary issues all required elements of Parivar's affirmative defense. (See *Trejo v. Johnson & Johnson*, *supra*, 13 Cal.App.5th at p. 138 [jury instruction on a required element "did not obviate the necessity of including that required element in the special verdict"].)[11]

Thus we are constrained to conclude that simply presuming the jury followed the instructions it was given does not resolve the issue presented here. For a variety of reasons, the instructions themselves are not such a model of clarity that they ensure the jury understood the phrase "exempt duties" in the special verdict question called for them to consider all of the matters that are subsidiary to "duties which meet the test of the exemption"

---

[11] The trial court's error in crafting the special verdict form is understandable because it drew from standard CACI No. 2720, which instructs that a defendant must prove that a plaintiff "perform[ed] executive duties more than half of the time." Unfortunately, however, that standard instruction does not refer to "duties which meet the test of the exemption." Perhaps this case will lead the drafters of the CACI instructions to revisit the language of CACI No. 2720 and adopt a clarifying revision.

(Cal. Code Regs., tit. 8, § 11050, subd. 1(B)(1)(e)) under the wage order and *Ramirez*. A reasonable juror may well have looked no further than what Rodriguez actually did—according to her own testimony—without taking into account whether, upon a consideration of the employer's reasonable expectations, she should have been engaged in more managerial tasks than she actually performed, and thus been charged with having spent more time on expected managerial tasks than she claimed she did. The court's instructions explained (albeit ambiguously) how to undertake this broader, contextual assessment, but the actual question the jury was asked to answer was so narrow that it short-circuited any need to consider the broader context.

**D. *The Court's Special Verdict Error Was Prejudicial***

A court's defective special verdict question requires reversal if the error results in a miscarriage of justice. (*Taylor v. Nabors Drilling USA, LP, supra*, 222 Cal.App.4th at pp. 1244–1245.) A "miscarriage of justice" has occurred if, upon our examination of the entire cause, including the evidence, we conclude " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800, quoting *People v. Watson* (1956) 46 Cal.2d 818, 836.)

" 'A "reasonable probability" "does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." [Citation.] It "does not mean 'more likely than not,' but merely 'probability sufficient to undermine confidence in the outcome.' " [Citation.] Therefore, reversal is necessary when it cannot be determined whether or not the error affected the result, as in such a case there "exists . . . at least such an equal balance of reasonable probabilities" " 'that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of

21

the error.' " [Citation.]' (*People v. Hardy* (2021) 65 Cal.App.5th 312, 329–330; see *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 668 [a reasonable probability of a different result is shown when the error ' " 'undermines confidence in the outcome' " ']; *People v. Mar* (2002) 28 Cal.4th 1201, 1225 [under the reasonable probability standard, 'reversal is required when there exists "at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result" ']; *People v. Mower* (2002) 28 Cal.4th 457, 484 [same].)" (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 324.)

On this record, the prejudice question is close because there is not much evidence favoring Parivar's argument that, in effect, Rodriguez spent too much time on nonexempt tasks and, in the assessment of how she spent her time, could have been fairly charged with having spent more time on executive tasks in accordance with Parivar's reasonable expectations. But while it is thin, evidence for that perspective on the facts presented here is not wholly absent. Parivar points out, for example, that Muhammad Haq, Rodriguez's district manager, told her she needed to spend more time training employees and also advised her to hire more employees. Drawing inferences for Parivar, Rodriguez—who was indisputably well-regarded as an employee and received multiple bonuses—had essentially taken on a role akin to a "player-coach" in athletics, and despite the fact that her team performed well, she was told by her district manager that she needed to spend less time on the "playing field." Without endorsing this line of argument or assessing the credibility of the evidence on which it is based (which is not our role), we are satisfied that, had a properly phrased question asking for a finding of ultimate fact on Parivar's executive exemption been asked, there is a reasonable probability of a result more favorable to Parivar than the one the jury delivered.

In the end, two considerations are dispositive on the prejudice question. First, the 9 to 3 vote clearly indicates the jury did not consider the evidence overwhelming for either Rodriguez or Parivar on this question, because the vote mustered only the bare minimum required to find Parivar had not proven the matter. The split vote is one of two factors that undermine our confidence that the jury would have rejected Parivar's affirmative defense in the absence of the court's special verdict error. (See *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.* (1984) 36 Cal.3d 752, 774 [that only the bare number of jurors required agreed on a plaintiff's verdict " 'len[t] . . . support to the probability' " that an erroneous instruction " 'was the factor which tipped the scales in [plaintiff's] favor' "], overruled in part on other grounds in *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 102–103 and disapproved in part on another ground in *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393, fn. 5; followed in *Barouh v. Haberman* (1994) 26 Cal.App.4th 40, 47–48; see also *Huntingdon v. Crowley* (1966) 64 Cal.2d 647, 660–661 [noting jury returned a 9 to 3 verdict in finding an instructional error was prejudicial].)

Second, the question of whether Rodriguez spent most of her time engaged in duties that meet the test of the executive exemption was extensively contested at trial. The evidence in support of the position that she did *not* includes Rodriguez's own testimony that she spent 70 to 80 percent of her time covering one or the other of the restaurant's workstations, where her primary purpose was to perform the same duties as nonexempt employees, such as taking orders, preparing drinks, cooking food and serving customers. She testified that she worked most at the drive-thru and in the kitchen, covered for employees when they went on breaks or did not show up for work, and spent six to 12 hours a week prepping food. There is also evidence that restaurant managers, while instructed to work at designated

23

workstations as the "person-in-charge" as part of their supervising and managing employees, were nonetheless expected to serve customers when working at these workstations.

Rodriguez further testified that she spent so much time performing the work of nonexempt employees in order to meet Parivar's prescribed speed of service and the labor budget for her restaurant with the knowledge, instruction and approval of her direct supervisor. She similarly testified that she worked in the kitchen because her supervisor, Haq, told her that, along with checking on employees' food preparation, she should do the preparation herself if she could in order to control food costs. Haq testified that Rodriguez was "very good at her job," that he never "wrote her up," and that she more often than not received a quarterly bonus for meeting Parivar's goals for her restaurant.

On the other hand, the evidence in support of the position that Rodriguez *did* spend most of her time engaging in duties that meet the test of the executive exemption includes that Rodriguez was instructed in her training that she was expected to engage in a variety of executive tasks designed to ensure her restaurant was successful, including managing labor and food costs, training and coaching employees, ensuring food safety and creating "an effective schedule that builds sales" through "diligent attention to staffing levels, proactive interviewing and thoughtful planning."

There is also evidence supporting the position that, in practice, Parivar realistically expected Rodriguez to supervise and manage more than she claimed she was able to do. Haq (who only visited the restaurant two to three times per week) testified that he expected Rodriguez to train employees and staff her restaurant so that she had "enough people and right people at every station" to perform the necessary tasks. There is evidence that at times he advised her to spend more time training employees and to hire more of them,

24

and that, if Rodriguez's restaurant was not meeting expectations, he expected her to identify and solve the problem by applying the management training she had received. Further, if Rodriguez did work on the restaurant floor a considerable number of hours, evidence indicates that she was expected to supervise and manage employees by "keep[ing her] eye on all of the stations" and "visibly managing the shift" from one of the workstation positions specifically designated for the "person-in-charge" in order to keep the restaurant running smoothly.

Finally, there is evidence that Rodriguez, contrary to her testimony, was not necessarily required to spend most of her time engaging in nonexempt tasks, including evidence that employees complained about their lack of hours; evidence that her supervisor at times told her to hire more employees; and the testimony of a defense expert witness that he concluded, based on his review of Rodriguez's restaurant's records, that the restaurant was not busy all of the time and was adequately staffed, so that Rodriguez should have been able to spend more than half of her time performing managerial duties. Since the issue of how Rodriguez spent her time was hotly contested, with evidence favoring both sides, any ambiguity in what the jury was asked to find could easily have had a significant impact on the verdict.

Accordingly, given the jury's 9 to 3 vote that Parivar did not prove Rodriguez spent more than half of her time performing exempt duties, and given the heavily contested question of whether she spent that time performing duties which meet the test of the executive exemption, we conclude it is reasonably probable that the jury would have reached a result more favorable to Parivar in the absence of the court's special verdict error.

25

## III. DISPOSITION

The judgment and attorney fees award are reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.  Parivar, Inc. and Yadav Enterprises, Inc. are awarded costs of appeal.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
BROWN, J.

Trial Court:  Superior Court of California, County of Alameda

Trial Judge:  Hon. Jenna Whitman

Counsel:      Rogers Joseph O'Donnell, Dennis C. Huie,
              Sharon Ongerth Rossi and Si Eun Amber Lee for Defendants
              and Appellants.

              Leonard Carder, Amy Endo and Jennifer Keating for Plaintiff
              and Respondent.

*Rodriguez v. Parivar, Inc., et al.* – A158939, A160694