Filed 1/6/26  Parker v. Innovative Speech Therapy and Communication Services CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SHINA PARKER<br><br>  Plaintiff and Respondent,<br><br><br>  v.<br><br><br>INNOVATIVE SPEECH THERAPY and COMMUNICATION SERVICES, INC.,<br><br><br>  Defendant and Appellant. | B326508<br><br><br>(Los Angeles County<br>  Super. Ct. No. 19STCV36310) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Upinder S. Kalra, Judge.  Affirmed.

Schneiders & Associates, Greg May, for Defendant and Appellant.

Employee Justice Legal Group, Kaveh S. Elihu, Daniel J. Friedman, for Plaintiff and Respondent.

Respondent Shina Parker sued her former employer, appellant Innovative Speech Therapy and Communication Services, Inc. (IST), alleging discrimination and related claims in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.). The jury found in favor of Parker on her claim that IST wrongfully terminated her based on her disability, a broken toe, while she was on disability leave. IST contended it terminated Parker because she failed to complete statutorily mandated training within the first year of her employment. The jury awarded Parker $200,732 in lost wages and non-economic damages against IST.

On appeal, IST argues that the trial court erred in failing to include on the special verdict form all elements of its affirmative defense that it had a legitimate reason for Parker's termination. IST also contends that the jury's award of economic damages was not supported by substantial evidence. We find no error and therefore affirm the judgment.

## BACKGROUND

### I. Complaint

Parker filed her complaint in October 2019, alleging nine causes of action against IST: (1) disability discrimination in violation of FEHA; (2) retaliation in violation of FEHA; (3) failure to prevent discrimination and retaliation in violation of FEHA; (4) failure to provide reasonable accommodations in violation of FEHA; (5) failure to engage in good faith interactive process in violation of FEHA; (6) retaliation in violation of the California Family Rights Act (CFRA) (Gov. Code, § 12945.2 et seq.); (7) declaratory judgment; (8) wrongful termination in violation of public policy; and (9) failure to permit inspection of personnel and payroll records. Ultimately, only four claims proceeded to trial—discrimination (claim one), retaliation (claim two), failure to prevent discrimination and retaliation (claim three), and wrongful termination (claim eight).

In her complaint, Parker alleged that IST hired her as a direct support professional (DSP) on December 2, 2017. She fractured her foot on the job on October 12, 2018 and her doctor placed her on medical leave until October 29, 2018. Her doctor then extended her leave until December 17, 2018. IST terminated Parker's employment on December 3, 2018, while she was on leave. Parker sought compensatory damages for her lost wages, damages for

her emotional distress, statutory penalties, a declaratory judgment, injunctive relief barring IST's "discriminatory employment policies and practices," punitive damages, and attorney fees.

## II.    Relevant Evidence at Trial

The parties stipulated to the following relevant facts at trial: Parker was hired as a DSP on December 2, 2017.  She fractured her toe on October 12, 2018.  She was placed on medical leave from October 17 through October 29, 2018, then extended to December 17, 2018.  Parker's work restrictions included not being able to stand or walk for more than 10 cumulative minutes per hour.  Parker was terminated on December 3, 2018 while she was on medical leave.

In addition, the parties adduced the following evidence relevant to the issues raised in this appeal.

### A.    Background

IST operates two residential care facilities for adults with developmental disabilities.  Andrew Terrence Hardge has owned IST since it opened in 2006.  Hardge also functions as the company's administrator and handles all hiring and firing, payroll, and scheduling.  Hardge is IST's only supervisor.  IST consists of Hardge, his wife, and four employees.  All of IST's employees are DSPs, who provide the day-to-day care for the facility residents.

### B.    Parker

Parker testified that she applied to IST in late 2017 as a second job because she needed the extra income.  She had been working since 2007 as a DSP at Social Vocational Services (SVS), a day program for adults with disabilities.

#### 1. Injury

On October 12, 2018, Parker injured her left pinky toe by hitting it on some bricks while working at IST.  She notified the "house manager," Noy Hampton, of her injury the same day.  Hampton asked her to finish her delivery of medication for some residents and then told her to go to urgent care.  Parker complied. Her doctor diagnosed her with a fractured toe and placed her on medical leave until October 15, 2018.  She emailed her doctor's note to Hardge the same day.  Hardge responded the next day, "I'm sorry

3

about your injury." He confirmed that she was removed from shifts through October 15.

As of October 15, Parker felt she was not able to return to work. She was still in pain and her foot was in a boot. She was also on medication that made her sleepy. That day, her doctor placed her on modified activity through October 29, stating that she should not stand or walk more than 10 cumulative minutes per hour and should continue to use the boot. Parker emailed the work restrictions to Hardge. As an accommodation, Hardge proposed putting Parker on the night shift and told her she could let the residents sleep until she was relieved by other employees in the morning. Parker testified that she had concerns with this proposal because she would be working the shift alone and was still on medication and movement restrictions. As a result, she was concerned that she would not be able to stay awake during an overnight shift or assist a resident if they needed help at night.

Parker was scheduled to return to work for the night shift on October 17, but that day she emailed Hardge that she was in too much pain and could not come in. She said she was going to see the doctor the next day, and Hardge asked her to follow up with him once she had her doctor's note. On October 18, Parker's doctor placed her off work until October 29, 2018. Parker emailed her leave paperwork to Hardge on October 18. In response, she received a letter from Hardge dated October 25, 2018. In the letter, Hardge acknowledged receiving Parker's work status paperwork and told her she was next scheduled to work on October 31, 2018. He asked her to provide an update from her doctor "regarding your ability to work" by October 30.

On October 26, Parker went to a follow-up doctor's appointment and her doctor extended her leave through December 17, 2018. She emailed the doctor's note to Hardge the same day. Hardge did not respond and she had no further communication with him until she was terminated.

Parker received a termination letter in the mail from IST dated December 3, 2018. The letter, signed by Hardge, stated that Parker was "registered to begin taking DSP Year 1 Training beginning on November 7, 2018. Unfortunately, you had an injury that prevented you from attending."

The letter quoted Welfare and Institutions Code, section 4695.2,[1] which requires DSPs to complete a 35-hour training program during their first year of employment and stated that Parker was "made aware of this requirement."[2] IST concluded that under California law, it was "unable to allow you to continue to work at our facilities because you have not obtained DSP 1 certification" and had been employed at IST for one year as of December 2, 2018. IST concluded, "We realize that it is unfortunate that you had the toe injury before you were scheduled to take this course but we must comply with the State of California regulations in regards to mandated certification. We are willing to consider you for rehire if you obtain the required DSP 1 certification."

       2.     Training

Parker testified that she was not told about the DSP 1 training requirement when she was hired by IST. She first heard about it in June 2018, when Hardge emailed her to register for the training the following month. She complied, but before the class began, Hardge asked her to withdraw from the training due to staffing issues and to take the training "at a later date."

In August 2018, Hardge emailed Parker directing her to register for the DSP 1 training scheduled to begin on November 7, 2018. She completed the registration and informed Hardge she had signed up for the class. The training would take place weekly and was scheduled to conclude on December 19, 2018.

Parker began the DSP 1 training as scheduled on November 7 and completed it on December 19, 2018. She did not notify Hardge that she had

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

[2]     Section 4695.2 requires, in pertinent part, that "[e]ach direct care staff person employed in a licensed community care facility" "shall satisfactorily complete" a 35-hour "competency-based training course or pass a department-approved competency test applicable to that training segment within one year from the date the staff person was hired." (§ 4695.2, subds. (a), (c).) Under subdivision (d), a DSP "who does not comply with this section may not continue to provide direct care to consumers in a licensed community care facility."

5

begun taking the training because she did not know she had to do so. She was able to complete the class while on medical leave because it didn't conflict with any of her restrictions. Parker did not dispute that as of December 3, 2018, she had been employed at IST for a year and had not completed the training. She never had any discussions with Hardge about other options for compliance since the training would not be completed by her one-year anniversary. Parker's doctor released her to work with no restrictions on December 17, 2018. She did not reapply to IST after getting her certification because at that point "I didn't trust Mr. Hardge."

        3.     Damages

Parker testified that she enjoyed her job at IST and also needed the second income because she was living paycheck to paycheck. Before her leave, she was working 35 to 50 hours per week, at a rate of $12 per hour. She discussed at trial her earnings records produced by IST. She testified that she was paid "biweekly."

During cross-examination, defense counsel asked Parker how she reached her estimate that she worked 35 to 50 hours per week at IST. She testified, "I know I was working more hours at [IST] than I was at [SVS]. So I just estimated 35 to 50 hours of pretty much - - I know I was putting in more hours there than any of my jobs." She also testified that she believed she worked 50 or more hours per week at IST "a lot" of times.

After returning from medical leave, Parker went back to work at SVS. She worked there 30 hours per week for $12 per hour. She also looked for a second job to replace her position at IST. She began working at W&W Joint Ventures, Inc. (W&W) as a DSP around January 15, 2019. Parker testified that she worked at W&W for 30 hours per week for $12 per hour. She estimated that she lost $2,000 to $3,000 during the 30 to 45 days she did not have a second job. She also made less money at W&W than she had at IST because she was given fewer hours at W&W. She introduced at trial several earnings statements from SVS and W&W.

Parker left W&W around September 2019 because she received a job offer at "Firstcare" with a promise of more hours. However, she was never put on the schedule at Firstcare. She left Firstcare when she found a caregiving job with In-Home Supportive Services. She worked there 20 to 25

6

hours per week at $14 per hour. Thus, she still made less than she had at IST because she was working fewer hours.

Parker testified that she was still employed at In-home Support Services and her current hourly rate was $16 per hour, due to increases in minimum wage. However, she had not worked with a client since June 2022 and therefore was not earning any income from that job at the time of trial in September 2022.

### C. Hardge

Hardge testified that he hired Parker in 2017. At the time, he told Parker she had to complete the DSP training or she would be terminated. Hardge acknowledged that there was no document confirming this statement. He cited to the policy in the employee handbook stating that that an employee's "[f]ailure to present or retain certification may result in disciplinary action, up to and including termination of employment." However, Hardge acknowledged that he did not give Parker a copy of the employee handbook at the time she was hired. The handbook was "fully developed" in November 2018 and issued on November 24, 2018. At that time, Hardge sent a copy of the handbook to all employees, including Parker (who was then on medical leave).

In June 2018, Hardge emailed Parker about registering for the DSP 1 training. His email stated that the training was important, but it did not mention that an employee could be terminated if the training was not timely completed. He asked Parker to withdraw from that training because an emergency arose and he needed her to be at work. He then emailed Parker about the training starting in November 2018. He did not know Parker had proceeded with the class until the lawsuit.

Hardge acknowledged receiving the emails from Parker with updates on her injury. After he got the doctor's note extending her leave to December 17, he tried to call Parker, but she would not return his calls. He did not text or email her. He testified that "had she taken my calls or communicated with me, I could have worked with her or offered other options," including taking the test to waive the training requirement. He acknowledged that the November training course would not be completed until December 19, 2018, after Parker's one-year employment anniversary. When he sent the

7

registration email, he did not anticipate that she would get injured in October, but he agreed with Parker's counsel that the injury "changed everything."

Hardge explained his understanding of the statutory requirement that Parker could not continue to work as a DSP without completing the training during her first year. He agreed that the decision to fire Parker was his choice, but stated that there was no other available position for her aside from DSP. If she worked as a DSP without completing the training, IST could get in trouble with licensing.

Hardge acknowledged in one instance, another employee, Christina Munoz, was allowed to keep working as a DSP even though she had not completed her training within the first year. That happened a few months after Parker was terminated. But he claimed that case was different because Munoz "communicated with me." In addition, if he had terminated Munoz, he would not have had enough staff to handle all the residents. At the time, IST was in "crisis mode" and needed Munoz for staffing. Hardge and his wife were already filling in as DSPs after Parker was terminated, so he made an exception for Munoz.

Hardge explained that he viewed the invitation to reapply in Parker's termination letter as "an olive branch." He testified that the termination letter was "very compassionate." Parker never told him she had completed the training and never reapplied to the position. He reiterated that if Parker had communicated with him, like Munoz did, it would have made a difference. But he acknowledged that the termination letter did not mention any communication issues as a reason for Parker's termination.

Hardge also testified that based on IST's payroll documents, Parker worked an average of 35 hours per week for IST. She never worked more than 50 hours a week.

### D. Munoz

Munoz works as a DSP at IST and SVS. She testified that Parker was a "great worker" and clients loved her. In the fall of 2018, Munoz was working about 40 hours per week for IST. She currently works between 30 and 60 hours per week.

Munoz did not finish her DSP 1 certification within her first year at IST.  Her one-year anniversary was in January 2019 and she finished the training the following month.

She understood that if you did not take the training, you could not do direct work with clients.  She did not understand that you would be terminated.

### E.    Dr. Lichtenberger

Dr. Catherine Lichtenberger, a behavior analyst, has worked as a consultant with IST for about 15 years.  She testified that the DSP 1 requirement is a 35-hour training to be completed in the first year.  A DSP can also test out of the training requirement.  Lichtenberger also testified that if a program falls out of compliance, it is a "substantial inadequacy," and can result in the program getting a corrective action plan, or being put on a "do not refer" list for clients.  She opined that it was "an absolute requirement" for a licensed facility to ensure it was compliant.

## III.   Verdict

At IST's request, the trial court instructed the jury with an instruction reciting part of the text of section 4695.2.  However, the court rejected IST's proposed special verdict form on the statute, which would have asked the jury to answer questions including whether Parker was employed by IST for one year, whether she failed to complete the DSP 1 training within one year from hire, and whether IST terminated Parker because she failed to complete the DSP 1 training.  We discuss IST's proposed special verdict form further in the relevant discussion section below.

Instead, the court used a special verdict form asking whether Parker's disability was a substantial motivating reason for her discharge, and, if so, whether Parker's failure to complete the DSP 1 training was also a substantial motivating reason.  The jury answered "yes" to the first question and "no" to the second question on this form.  The jury also found in favor of Parker on all four of her claims.  The jury awarded Parker $47,110 in past lost earnings, $83,622 in future lost earnings, $40,000 for past noneconomic loss, and $30,000 for future noneconomic loss, for a total of $200,732 in damages.  The jury found in favor of IST on Parker's claim for punitive damages.

The court entered judgment November 10, 2022.

## IV. Post-verdict Motions

IST filed a motion for new trial and motion for judgment notwithstanding the verdict.[3] IST argued that because Parker failed to complete the required DSP training within her first year, IST was required to terminate Parker in accordance with section 4695.2 and thus had a legal justification that acted as a complete defense to Parker's claims. IST further argued that the court erred by rejecting IST's proposed special verdict form on section 4695.2, "which would have given the Jury the opportunity to review whether [Parker] met the required elements of the Statute." IST also argued that the jury's damages award was excessive and not supported by sufficient evidence.

Following a hearing, the court adopted its tentative ruling and denied both motions. We discuss the relevant portions of the court's order further below.

Parker moved for $702,497.08 in attorney fees and costs. On September 11, 2023, the trial court granted the motion in part. The court found that Parker's counsel's billing entries included an "excessive number of attorneys, duplicative work, and questionable entries that are not adequately justified." The court accordingly reduced the award to $426,310.43 in fees and costs. The court entered an amended judgment incorporating the attorney fee award on October 11, 2023.

IST filed three separate appeals from the November 2022 judgment, the September 11, 2023 attorney fee order, and the October 2023 amended judgment. We consolidated the appeals for all purposes.

## DISCUSSION

## I. Special Verdict Form

IST argues that the trial court erred in rejecting its proposed special verdict form and instead using a special verdict form that did not adequately address its defense that it had a legitimate reason to terminate Parker. IST further contends that this error was prejudicial. We disagree on both points.

---

[3] IST does not challenge the denial of the motion for judgment notwithstanding the verdict on appeal.

10

### A. Factual Background

Prior to trial, IST proposed a special verdict form regarding section 4695.2. The form included the following questions:

(1) Was IST a licensed community care facility? (IST premarked the answer as yes.)

(2) Was Parker employed by IST as a DSP? (IST premarked the answer as yes.)

(3) Was Parker employed by IST for one year? (If the answer was yes, the form instructed the jury to proceed to the next question.)

(4) Did Parker fail to complete the DSP 1 training within one year from the date she was hired? (If yes, proceed to the next question.)

(5) Did IST terminate Parker's employment because she failed to complete the DSP 1 training, as required by section 4695.2?

At a conference during trial, the court noted that the parties had resolved all issues regarding the jury instructions and special verdict form, except for IST's proposed special verdict form on section 4695.2. The court indicated it had discussed the matter with the parties that morning, off the record, and the court "did indicate that it's going to instruct on the law in this area. This actually asks for findings, and the defense position is it's relevant to the injunctive relief which is obviously directed at the court. They want findings made by the jury." The court indicated its tentative ruling "that if it's directed at the court and not the jury, there's no reason for this verdict form." The court then asked defense counsel if she wanted to be heard further. She responded, "I think we've covered it, your honor." The court concluded that it would not include the proposed special verdict form.

The court did grant IST's request to instruct the jury with a modified version of CACI 2512, "limitation on remedies – same decision." The instruction explained that Parker claimed she was discharged because of her disability, an unlawful reason, while IST claims that Parker was discharged because of her failure to complete the DSP 1 training or alternate competency test, "as required by [section] 4695.2, which is a lawful reason." If the jury found that discrimination or retaliation was a substantial motivating reason for Parker's discharge, the instruction explained that the jury must then consider whether Parker's failure to complete the DSP 1 training "was also a

11

substantial motivating reason." If so, the jury then "must determine whether the defendant has proven that it would have discharged Ms. Parker anyway at that time based on her failure to complete" the DSP 1 training, "even if it had not also been substantially motivated by discrimination or retaliation." The court also instructed the jury with the relevant text of section 4695.2.

The special verdict form given to the jury included questions on each cause of action, which the jury answered in favor of Parker. The verdict form also included questions relevant to IST's defense of "limitation on remedies – same decision." Question one asked whether Parker's disability was a substantial motivating reason for the discharge, which the jury answered affirmatively. Question two asked whether Parker's failure to complete the DSP 1 training was also a substantial motivating reason for the discharge. The jury found that it was not and therefore did not proceed to the remaining questions.

In its post-verdict motion for new trial, IST argued that the court erred by refusing to use its special verdict form on section 4695.2. At the start of the January 2023 hearing on the motion, the court issued a tentative order denying the motion for new trial. In the tentative, the court addressed IST's contention that it was error to reject IST's proposed special verdict form on section 4695.2 The court stated that IST had asserted that its proposed special verdict form on section 4695.2 was relevant to Parker's claim for injunctive relief. As such, the court "determined that this instruction was not relevant to the jury as it pertained to injunctive relief, and all parties agreed that the verdict form was not necessary." Even "if the objection was not waived," the court found that its prior ruling that the instruction was not relevant was correct.

Additionally, the court rejected IST's argument that it was required to terminate Parker pursuant to section 4695.2. Noting the use of the permissive "may" rather than the mandatory "shall" in the portion of the statute stating that a DSP who does not comply "may not continue to provide direct care to consumers" (§ 4692.d, subd. (d)), the court concluded that IST had not established that termination was mandatory under the statute. As such, "the Court does not find that *as a matter of law* the termination was lawful."

12

At the hearing, defense counsel disputed that IST had conceded that its proposed special verdict form on section 4695.2 was not necessary. The court agreed, stating that it "never considered you waiving your objection." At the conclusion of the hearing, the court adopted its tentative as the final order denying IST's motion.

### B.    Legal Principles

"[A] special verdict is that by which the jury find the facts only, leaving the judgment to the Court. The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law." (Code Civ. Proc., § 624; see also *J.P. v. Carlsbad Unified School Dist.* (2014) 232 Cal.App.4th 323, 338 (*Carlsbad*).) "'A special verdict is "fatally defective" if it does not allow the jury to resolve every controverted issue.'" (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1240, quoting *Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 325 (*Saxena*).)

Thus, a proper special verdict form must ask the jury to make determinations regarding all of the essential elements of a cause of action or defense. (*Rodriguez v. Parivar, Inc.* (2022) 83 Cal.App.5th 739, 752 (*Rodriguez*); see also *Stoner v. Williams* (1996) 46 Cal.App.4th 986, 1002 ["The elements of a cause of action constitute the essential or ultimate facts in a civil case."].) "Ultimate facts are distinguished from evidentiary facts and from legal conclusions." (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513 ["the term 'ultimate fact' generally refers to a core fact, such as an essential element of a claim"].)

The issue here is whether the special verdict form as given contained all of the necessary ultimate facts. We analyze the correctness of a special verdict form de novo as a matter of law. (*Saxena, supra,* 159 Cal.App.4th at p. 325; see also *City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 678.)

### C.    Analysis

As an initial matter, Parker argues at length that IST has forfeited and/or waived its claims of error on appeal. We reject these contentions. IST's appellate briefs sufficiently outline the relevant factual background and

include proper citations to the record to preserve its claims. Moreover, we cannot find, as Parker suggests, that IST failed to object to the special verdict form during the trial. IST argued below that its proposed special verdict form on section 4695.2 was a necessary component. While it appears that some of the discussion regarding this form between the court and the parties occurred off the record, the trial court expressly found that IST had not forfeited its objection to the court's decision not to include the proposed form. We see no basis in the record to conclude otherwise.

We also see no error in the trial court's conclusion that the proposed special verdict form addressed an issue of law to be determined by the court, not the jury. IST has argued throughout these proceedings that it was *required* to terminate Parker for noncompliance with section 4695.2 and therefore that its decision was nondiscriminatory as a matter of law. This contention relies on interpreting the statutory language, specifically the phrase providing that a DSP "who does not comply with this section *may not* continue to provide direct care to consumers." (§ 4695.2, subd. (d), emphasis added.) The trial court found that language was permissive, rather than mandatory, and therefore concluded that nothing in the statute required IST to terminate an employee who had worked for more than a year but had not completed the DSP 1 training. On appeal, IST has not provided any argument or authority establishing that this finding was in error. (See Evid. Code § 310 [questions of law are for the court]; *Brown v. Smith* (1997) 55 Cal.App.4th 767, 784 [noting the "court's duty to resolve statutory interpretation questions, which are not to be sent to the jury"].)

IST also contends that the special verdict form given to the jury failed to include the essential elements of its defense that it had a legitimate reason to terminate Parker. IST provides no authority supporting its contention that its proposed "decision tree" of questions based on section 4695.2 was necessary to establish the essential factual elements for an affirmative defense of a legitimate purpose for termination. (See, e.g., *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [failure to develop claim with reasoned legal argument and supporting authority forfeits the issue]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["An appellate court is not required to examine undeveloped claims, nor to make arguments for

14

parties."].) Instead, evidence of an employer's legitimate basis is relevant to the jury's ultimate determination of "which evidence it finds more convincing, that of the employer's discriminatory intent, or that of the employer's [disability-]neutral reasons for the employment decision." (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 204.) That ultimate question was posed to the jury here in the special verdict form, which asked whether Parker's failure to timely complete her training was a substantial reason for her termination. "[A] special verdict question is proper when it presents a question of ultimate fact to the jury, and the court is not necessarily required to give questions to the jury regarding all of the subsidiary matters it must consider in answering this question." (*Rodriguez, supra,* 83 Cal.App.5th at p. 754; see also *Carlsbad, supra*, 232 Cal.App.4th at pp. 338-339 [special verdict form did not need to separately ask about each element of estoppel, but adequately "presented the issue of estoppel as a whole to the jury as a single question"].) We conclude that the special verdict form given by the trial court included the question of ultimate fact relevant to IST's defense and therefore no error occurred.

IST relies on *Rodriguez, supra*, 83 Cal. App.5th 739, but that case underscores the point. In *Rodriguez*, a jury awarded damages to the plaintiff employee for unpaid overtime wages. On appeal, the employer argued that the special verdict form did not properly reflect the elements of its affirmative defense that Rodriguez was a manager and thus exempt from overtime. (*Id.* at p. 743.) The appellate court agreed that the form was defective, but *not* because it omitted questions on all parts of the six-prong test required for the statutory exemption. (*Id.* at pp. 753-754.) Rather, the court reversed the judgment because the "unduly restrictive" question posed in the special verdict form was "materially different" than the broader question of ultimate fact that would accurately reflect the requirements of the exemption. (*Id.* at pp. 753-755.) IST has made no similar claim here that the question included on the special verdict form incorrectly reflected the statute, but only that the court should have included additional questions reflecting the subsections of section 4695.2. Such questions are not required under *Rodriguez* or any other authority IST cites.

We also find that any error would be harmless. A defective question on a special verdict form requires reversal if the error results in a miscarriage of justice. (*Rodriguez, supra*, 83 Cal.App.5th at p. 756, citing *Taylor v. Nabors Drilling USA, LP, supra*, 222 Cal.App.4th at pp. 1244–1245.) A "miscarriage of justice" has occurred if, upon our examination of the entire cause, including the evidence, we conclude "'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800, quoting *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Parker did not dispute that the requirements of section 4695.2 applied to her work at IST and that she had not completed the DSP 1 training by her one-year anniversary at the company. As such, only the final question on IST's proposed form—whether IST terminated Parker's employment because she failed to complete the DSP 1 training—remained contested at trial. A version of that question was included in the special verdict form given to the jury, which found that Parker's failure to timely complete the training was not a substantial motivating reason for her discharge. Thus, the omitted questions were not contested issues. (See *Rodriguez, supra*, 83 Cal.App.5th at pp. 757-758 [finding prejudice where omitted issue was "extensively contested at trial"].)

In addition, regardless of whether IST could have reasonably terminated Parker because she had not completed her training, there was substantial evidence supporting the jury's conclusion that Hardge did not terminate her for that reason. Hardge directed Parker to delay taking the required training class and then prompted her to sign up for the class starting in November, even though he knew it would not be completed until after her one-year anniversary had passed. He also decided not to terminate Munoz, an employee who also failed to timely complete the training but who was not on disability leave, just a few months after discharging Parker. He never asked Parker whether she planned to complete the training while she was on leave and immediately terminated her the day after her one-year anniversary, despite the fact that she was scheduled to return to work on December 17 and complete the training just two days later, leaving only two days during which she could not work as a DSP under the statute. Contrary

16

to IST's counsel's claims that Hardge was required to terminate Parker, Hardge testified repeatedly that if Parker had just communicated with him that she was taking the training, things might have been different. Under these circumstances, we find it is not reasonably probable that the inclusion of a verdict form based on section 4695.2 would have resulted in a more favorable outcome for IST.

## II. Economic Damages

IST challenges the jury's award of economic damages to Parker.[4] It contends that the amounts awarded are not supported by substantial evidence and are excessive. We affirm.

### A. Factual Background

In his closing argument, Parker's counsel told the jury he had calculated her past earnings through trial at $22,587.86. He based that calculation on an average of 37.2 hours per week that Parker would have worked for IST at $12 per hour. Counsel also argued that Parker was entitled to three years of future earnings, "based on the fact that Ms. Parker likely would have kept this job for at least three years." He cited as a comparison the evidence that Munoz, who started at IST the same time Parker did, was still employed at IST. He calculated her future earnings comparing what she would have made at IST versus her income from In-Home Support Services, for a total of $15,055.56 for three years.

The court instructed the jury on economic damages with CACI 3903P. As pertinent, it instructs the jury to calculate the past amount that Parker would have earned, including any pay increases. For future wages, the instruction directs the jury to include the wages Parker would have earned for the length of time her employment with IST "was reasonably certain to continue." To determine that time, the jury could consider Parker's "age, work performance, and intent regarding continuing employment" with IST and any other relevant factors.

The jury awarded Parker $47,110 in past lost wages and $83,622 in future economic damages.

---

4       IST does not challenge the noneconomic portion of the award.

In IST's motion for new trial, it argued, as it does on appeal, that the jury's economic damages awards for both past lost wages and future economic damages were not supported by the evidence. IST pointed to the fact that the jury awarded much higher amounts than requested by Parker's counsel. In denying the motion, the trial court found that substantial evidence supported the jury's verdict on economic damages. The court reasoned that, based on Parker's testimony, the jury could have found that "after her termination, it was reasonable that [Parker] would be expected to work 30-50 hours a week or even more. Such a finding is reasonable despite contradictory payroll records showing that [Parker] worked *an average* of 35 hours a week before she went on leave." The court found that the inference that Parker could reasonably be expected to increase her hours was supported by Munoz's testimony that she was working 40 hours per week in 2018 but between 30 and 60 hours per week at the time of trial. "Accordingly, the jury could have calculated [Parker's] lost back wages at 50 hours per week at the applicable $12 hourly wage through December 31, 2020, adjusted for the increase in the minimum wage to $13 in 2021 and $14 in 2022.[ ] Such a calculation would have easily supported the $47,110 calculation for past lost earnings." The court also found the jury could have reasonably awarded Parker future lost earnings for seven or more years, taking into consideration her age, stated intent to continue employment with IST, and commitment to working in the same field. The court found that the fact that the jury awarded a higher amount than requested by Parker's counsel was of no legal significance, as long as substantial evidence supported the award. In reaching its decision, the court stated that it had looked carefully at the record and the parties' papers, especially because the jury's damages award was higher than what Parker requested. The court concluded that substantial evidence supported the economic damages award.

## B. Legal Principles

We review claims that insufficient evidence supports a jury verdict under the substantial evidence standard. (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188; see also *Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311, 1324 ["The amount of damages... is a fact question . . . [and] an award of damages will not be disturbed if it is supported by

substantial evidence."].) "'[T]he power of [the] appellate court begins and ends with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the [verdict].'" (*Wilson v. County of Orange, supra,* 169 Cal.App.4th at p. 1188.)

"Substantial evidence is evidence that a rational trier of fact could find to be reasonable, credible and of solid value.  We view the evidence in the light most favorable to the judgment and accept as true all evidence tending to support the judgment, including all facts that reasonably can be deduced from the evidence. We affirm the judgment if an examination of the entire record viewed in this light discloses substantial evidence to support the judgment." (*Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726, 736.)  "All presumptions not contradicted by the record on appeal are indulged to support the judgment, and the appellant has the burden to affirmatively show, based on the record, the trial court's commission of reversible error." (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872 (*GHK*).)  "'The evidence is insufficient to support a damage award only when no reasonable interpretation of the record supports the figure.'" (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 738, quoting *Rony v. Costa* (2012) 210 Cal.App.4th 746, 753–754.)

### C.    Analysis

IST contends that the record does not contain substantial evidence supporting the jury's award of $47,110 in past lost wages and $83,622 in future economic damages.  We agree with the trial court that substantial evidence supports the jury's award.

"Where the *fact* of damages is certain, the amount of damages need not be calculated with absolute certainty." (*GHK, supra*, 224 Cal.App.3d at p. 873.)  "The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." (*Ibid*.)[5]  "Damages must, in all cases, be

---

[5]    IST focuses on the language in *GHK* and similar cases that this lower standard is particularly applicable where it is the wrongful acts of the defendant that have created the difficulty in proving the amount of loss.  (See *GHK, supra*, 224 Cal.App.3d at p. 874.)  IST notes that it was not at fault for any difficulties Parker might have faced in producing records from other

19

reasonable." (Civ. Code, § 3359; see *Bermudez, supra*, 237 Cal.App.4th at p. 1328.)

Parker's claim for past economic damages was based on the difference between what she would have made had she stayed at IST and what she was able to earn at subsequent jobs, from the time of termination through trial. IST argues that the jury could not rely on Parker's testimony estimating that she worked at IST between 35 and 50 hours per week, because it conflicted with her time records showing that she worked an average of 35 hours per week. IST also contends, without support, that Parker's testimony as to "vague estimates" of her pay at her subsequent jobs was insufficient to meet the "level of certainty" required to establish her damages.

We disagree with IST that Parker's evidence was insufficient to establish as a reasonable estimate that she lost over $47,000 in wages during the almost four years between her termination in December 2018 and the end of trial in September 2022. Parker's testimony that she worked between 35 and 50 hours per week was not contradicted by the time records showing an average of 35 hours. Additionally, in determining how many hours she likely would have worked had she continued at IST, the jury reasonably could have found that her hours would increase over the prior average of 35, given Hardge's testimony about being short-staffed and the testimony by Munoz, a comparable employee, that she was working 40 hours per week in 2018 but at the time of trial her weekly hours ranged from 30 to 60. As the trial court noted, the jury could also take into consideration the minimum wage increases during this time period, from $12 per hour in 2018 to $14 per hour in 2022. We reject IST's contention that Parker's evidence of her replacement work was too vague to establish her damages. Parker estimated the time periods during which she was looking for work and the dates she worked at W&W. The trial court's rough calculation of her past damages, using a 50-hour work week at IST, was over $60,000. IST had not demonstrated any error in this calculation.

In addition, a similar rough calculation based on a 40-hour week, and accounting for minimum wage increases, totals over $40,000 in lost wages.

employment. While true, that fact does not require Parker to prove her damages with absolute certainty.

20

As such, the jury reasonably could have determined that Parker would likely have worked between 40 and 50 hours per week if she had remained at IST, and on that basis calculated her past economic damages at approximately $47,000.

IST similarly contends that Parker failed to prove her future economic damages with reasonable certainty. Courts reviewing damages for the loss of future earnings have held such damages are recoverable "'where the evidence makes reasonably certain their occurrence and extent.'" (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 738; see also *Licudine v. Cedars–Sinai Medical Center* (2016) 3 Cal.App.5th 881, 887 ["the jury must fix a plaintiff's future earning capacity based on what it is 'reasonably probable' she could have earned"].)

Parker's counsel argued that she was entitled to three years of future pay. Based on the jury's award of over $83,000 in future economic damages, the trial court determined that the jury awarded Parker up to seven years of future damages. IST contends there is no evidence to support a finding that Parker would likely continue to work for IST for seven years. We disagree. As the jury was instructed, in determining future lost wages, the jury could consider evidence such as the fact that at the time of trial, Munoz had worked at IST for over five years and Parker had worked at SVS for more than 15 years. The jury could also consider Parker's age (she was 44 years old in 2022) and her testimony regarding her intent to continue to work long term in the same industry caring for disabled adults. Parker's stated intent to continue in the field was further supported by the evidence that she completed the required training for first-year and second-year DSPs. Although Parker had not been able to work any hours at In-Home Support Services for several months prior to trial, assuming she resumed working there 20 to 25 hours per week, and based on a weekly average at IST between 40 and 50 hours per week, the jury's award of $83,622 reflects between five and seven years of additional wages. Viewing the evidence, as we must, in the light most favorable to the judgment, we conclude that substantial evidence supports the jury's damages calculations.

Finally, IST contends that reversal of the judgment on either ground must result in vacating the award of attorney fees. IST does not otherwise

challenge that award.  Because we have found no error, this challenge to Parker's attorney fee award is moot.

## DISPOSITION

The judgment is affirmed.  Parker may recover her costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

COLLINS, J.

We concur:

ZUKIN, P. J.

TAMZARIAN, J.